711 So.2d 360 (1998)
Paul E. TCHIBLAKIAN, II
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.
No. 97-CA-2287.
Court of Appeal of Louisiana, Fourth Circuit.
April 8, 1998.
Rehearing Denied May 29, 1998.
Sidney J. Angelle, Christy Howley-Michiels, Lobman, Carnahan, Batt & Angelle, Metairie, for Defendants/Appellants.
Edward F. Downing, III, Gauthier, Downing, LaBarre, Beiser & Dean, Metairie, for Plaintiff/Appellant.
Before SCHOTT, C.J., ARMSTRONG, J., and GULOTTA, J. Pro Tem.
SCHOTT, Chief Judge.
This tort claim arose out of an automobile accident. Following a jury trial the court submitted to the jury written interrogatories pursuant to LSA-C.C.P. Art. 1813. Included among them is the following interrogatory and the jury's answer thereto:
4. What amount in total, in (sic) any, would you award to plaintiff Paul Tchiblakian for the injuries you find were caused by the auto accident which occurred herein without considering any credit which may be due State Farm?

 Medical, Past and Future $12,000
 _______
 Other damages, past and Future $ 0
 _______

Following post-trial motions, the trial judge awarded plaintiff $25,000 in general damages in addition to the $12,000 for medical expenses. Both sides have appealed. The principal issue on appeal is whether plaintiff is entitled, as a matter of law, to have this *361 court affirm the award for medical expenses and make an award for general damages commensurate with the amount of the medical expenses award without regard to the jury's apparent finding that plaintiff's testimony was not credible.
This case arose out of a three-car accident. The lead car driven by Karen Turner stopped when a semaphore signal light facing her turned yellow, and her car was struck twice in the rear by a car driven by plaintiff, Tchiblakian, and owned by Gina Finn, who was a passenger in the car. Plaintiff's car, after striking the rear of Turner's car, was struck in the rear by a car driven by defendant, Anna Bertucci, and was pushed into Turner's car. State Farm Mutual Automobile Insurance Company provided $25,000.00 of liability insurance coverage to Bertucci and uninsured/underinsured (UM) coverage to plaintiff under Finn's liability policy. Plaintiff filed suit against Bertucci and State Farm in both capacities and sought penalties and attorney's fees against State Farm for allegedly handling the UM claim in an arbitrary and capricious fashion. In answers to the written interrogatories the jury allocated 95% of the fault to Bertucci and 5% to plaintiff, awarded $12,000.00 ostensibly for medical expenses to plaintiff, and found that State Farm did not act in an arbitrary and capricious manner in handling plaintiff's claim. The trial court rendered judgment for $11,400 pursuant to the jury's verdict.
State Farm and Bertucci filed a Motion for Judgment Notwithstanding the Verdict, or in the alternative, a Motion for New Trial seeking to have the medical award reduced to $30.00 and, in the alternative, have the judgment amended to reflect a credit of $5,000.00 previously paid to the plaintiff for medical payments under the Finn's policy. Plaintiff filed oppositions to these motions, but did not file any post judgment motions of his own.
The court took these motions under advisement and subsequently denied the JNOV in part, but, sua sponte, awarded plaintiff $25,000.00 in general damages pursuant to Odendahl v. Wild, 418 So.2d 36 (La.App. 4 Cir. 1982). Further, the court granted the JNOV in part and allowed a $5,000.00 credit for medicals already received. In addition, the court awarded the plaintiff costs of expert fees, witness fees, copies of medical records, and court costs in the amount of $5,583.08.
In this court both sides agree that the trial court, in response of defendants' motion for JNOV, was without authority to add the $25,000.00 to plaintiff's judgment on the court's own motion and without any motion filed by plaintiff. Consequently, that part of the judgment adding $25,000.00 is vacated and the original judgment for $11,400.00 is the one to be considered on appeal.
Next, we dispose of defendants' argument that the trial court erred in allocating only five percent of the fault in the accident to plaintiff. Defendants contend that plaintiff's car struck Turner's with enough force that this caused fifty percent of whatever injuries plaintiff sustained in the accident. This argument is without merit. A reading of the testimony of the three drivers, plaintiff, Turner and Bertucci and that of plaintiff's passenger Finn provides ample support for the apparent conclusion reached by the jury that the first collision between plaintiff's and Turner's cars was a slight one compared with the second one caused by Bertucci. Defendants have failed to establish manifest error on the part of the jury in this regard.
As stated at outset of this opinion, the principal issue in this appeal emanates from the jury's award of $12,000.00 ostensibly for medical expenses and the absence of an award for general damages. Each of the parties offers a simple, straightforward solution for the problem. Plaintiff would have the judgment increased by $150,000.00 to compensate him for a herniated disc, permanent disability, lost wages, and severe depression. Defendants would have the judgment reduced to thirty dollars for medical expenses and some nominal amount in general damages. Plaintiff argues that his position is supported by Odendahl v. Wild, 418 So.2d 36 (La.App. 4 Cir.1982), while defendant sharply disputes that position. Before considering that case and others dealing with this problem we must consider the unique facts of this case.
*362 The accident happened on January 6, 1995. Plaintiff testified as follows: At first he thought he was not injured but an hour later he felt pain in his back. Later that day he told State Farm's agent he was feeling some back pain. His pain worsened and was accompanied by tension, but he continued to work as a commercial painter over the following weeks because he needed the money. To alleviate the tension he would soak in the tub and lay on the floor with his feet elevated. On January 20 he went to Dr. Patricia Estrada, a family doctor, who diagnosed a severe muscle strain and prescribed a muscle relaxer. On the morning of February 3 he was sore, and working, when he squatted down to pick up a paint can and could not stand up. He did not consider it to be a work related accident but he attributed it to the automobile accident. The next day his girlfriend, Gina Finn, took him to the Ochsner emergency room where he was lifted out of the car onto a wheel chair. He told the doctors and the nurses that he had been in an auto accident several weeks before.
Plaintiff further testified that on February 7, 1995 Dr. Rand Voorhies, a neurosurgeon at Ochsner, began treating him. The medications prescribed for him made him sick and he had trouble sleeping. He had physical therapy and epidural injections but his pain persisted. He became depressed because he could not work and had no income. Dr. Voorhies referred him to the psychiatric department. By the time of the trial in March 1997, his life was better, he had a job delivering mail, and he was able to swim.
Plaintiff was confronted with his deposition taken on February 2, 1996 in which he testified that when he was admitted to the emergency room on February 4, 1995 he told the admitting physicians, Drs. Ford and McNulty that he had no trouble with his back for one or two weeks prior to the February 3 accident on the job and that he had no difficulty performing normal activities for weeks following the automobile accident. At trial plaintiff testified that he did not recall making these statements to these physicians and he could not remember what happened in the emergency room.
Plaintiff testified that he spoke to State Farm representative, Joe McGhee, on January 27, 1995, and told him he was doing "okay" and that he had been checked out by a doctor. On that day plaintiff believed his back situation was "no big deal and that he was not due a dime." McGhee offered him $250.00 which he considered ridiculous and unnecessary. In the week following the accident he worked only sixteen hours because that was all that was available. However, for the next two weeks he worked forty hours a week. Plaintiff claimed he had severe pain in his legs on January 29, 1995 when he was visiting the museum with Finn, but between January 6 and February 3, 1995 he had no trouble walking, standing or sitting. After February 3 he could not do these things.
Plaintiff's girlfriend, Finn, who was living with him said that plaintiff complained about his back a few days after the accident and got worse with time; she referred him to Dr. Estrada; his condition worsened after he saw her; he had a painful episode when they went to the museum on January 29; and he was never well between the dates of the auto accident and the paint can accident.
State Farm adjustor McGhee testified that he spoke to plaintiff on January 27 and settled the case for $250.00 and plaintiff agreed to pick up the check and sign a release. However, on February 6, 1995 plaintiff informed him he had a severe problem.
Dr. Voorhies testified that he first treated plaintiff on February 7 1995; plaintiff told him that as a result of the accident he suffered back pain which progressively worsened until February 3, 1995 when he bent down and had a severe spasm from which he could not stand. Dr. Voorhies' initial impression of a pinched nerve and a later impression of a major problem with his lower nerves were ruled out by further testing. An MRI showed that plaintiff had a congenital problem of a small spinal canal and a small bulging of a disc, but no herniation as of February 7. He related plaintiff's symptoms but not the disc problem to the accident.
Dr. Voorhies next saw plaintiff on February 21, 1995, when he was complaining of bladder and bowel problems but tests did not *363 connect these problems with any nerve damage. At his next visit on March 14, 1995, Dr. Voorhies referred plaintiff to Ochsner's psychiatric department because plaintiff appeared to be depressed and suicidal. On April 18, plaintiff's last visit to Dr. Voorhies, he was still complaining of back pain.
Dr. Voorhies testified that the history plaintiff gave him conflicted with the history he gave at the emergency room; the latter was consistent with the conclusion that the paint can incident was the cause of his problems; he appeared to be exaggerating his complaints; he did not require surgery; and his psychiatric problems existed prior to the auto accident.
Dr. Wilmot Ploger, an orthopedic surgeon, began treating plaintiff on July 28, 1995, for back pain and right leg pain. Plaintiff told him he had back pain from shortly after the accident, and that it got progressively worse until the February 3 incident. An MRI revealed a bulging disc and spinal stenosis, a congenital problem. Dr. Ploger saw plaintiff twelve times, the last time in February 1997, a month before the trial. He diagnosed herniated discs at LS-S1 and L 4-5. He stated that plaintiff may eventually require spinal surgery which would cost $35,000.00. While he would attribute this condition to the auto accident if plaintiff had continuing pain from the time of the accident he would not connect the discs to the accident if he had been pain free for ten days or more as he reported he was to the emergency room personnel.
Dr. Ploger also testified that the whole time he was treating plaintiff he exhibited no emotional or mental problems and he never mentioned having seen a psychiatrist or a social worker.
Dr. Peter Mahoney, a psychiatrist at Ochsner, was treating plaintiff between July and November 1995. He diagnosed plaintiff's condition as a major depression or adjustment disorder. Entries in plaintiff's psychiatric records showed that he had a burglary in his home, flood damage and relocation to a new home. Plaintiff never mentioned his accident on the job and Dr. Mahoney had no knowledge of plaintiff's condition between January 6 and February 3, 1995. Dr. Mahoney could not rule out whether plaintiff's other stressful events without the auto accident would have caused his depression.
Plaintiff began seeing a social worker for therapy in October 1995 and was still seeing him at trial time every other week. She attributed his mental problems to his back condition which she related to the auto accident based upon what he told her.
In Odendahl v. Wild, 418 So.2d 36 (La. App. 4 Cir.1982) the court held that it is an error of law for the trier of fact to award damages for medical expenses but none for general damages. However, in that case the court found that the plaintiff had proven that she suffered a lower back sprain that caused pain and suffering for four months and for which she incurred the medical expenses awarded. However, in that case there was no issue as to causal connection between the accident and the injury.
In the present case plaintiff predicates his entitlement to a substantial award for pain and suffering on the assumption that he proved the January 6 auto accident caused his herniated discs and his mental problems. As to the discs, whether they are the result of the auto accident or the result of the accident at work depends entirely on plaintiff's credibility. The Ochsner records show that he told the emergency room personnel, including Drs. Ford and McNulty, that he had no pain or difficulty with his back for some time prior to the accident on the job. This was in conflict with the history he gave to Drs. Voorhies and Ploger. The record easily supports the conclusion that his back pain from the auto accident had subsided long enough prior to the work accident so that no expert would attribute the discs to the auto accident.
The same applies to plaintiff's mental condition. He simply failed to prove that this was the result of the auto accident. No expert said that it was and the record supports the view either that his condition was not as bad as he makes it out to be or whatever his condition it resulted not from the auto accident but from the accident on the job in February. The jury had the benefit of seeing and hearing plaintiff testify. *364 Their verdict clearly demonstrates their rejection of his credibility.
Plaintiff would have this court apply the "weakened condition" theory to connect his disc problem to the auto accident. He cites Younger v. Marshall Industries, Inc., 618 So.2d 866, 872-873 (La.1993). However, the record contains no evidence to support the application of this theory to this case.
A careful examination of the interrogatory on damages suggests that the jury may have been misled by it. It first asks for the amount "in total" to award plaintiff for his injuries and then it provides two separate lines for parts of the award. The most logical explanation for the jury's award based upon our review of the record is that they were convinced that plaintiff suffered nothing more than a soft tissue injury from the auto accident and they awarded $12,000 "in total" for his injuries.
Both parties assigned errors relating to the issue of plaintiff's entitlement to penalties and attorney's fees against State Farm in its capacity as UM insurer. In view of our decision to affirm the jury's verdict of $12,000.00 these assignments are moot since the amount of the recovery is less than the limits of coverage afforded by State Farm in Bertucci's liability policy. However, for the benefit of a reviewing court, our review of the record convinces us that the jury did not commit manifest error in its finding that State Farm did not act in an arbitrary and capricious manner in handling plaintiff's claim.
Defendants take issue with the trial court's award of costs to plaintiff for his counsel to travel to Michigan to take the deposition of a physician. The trial court has great discretion in awarding costs and the appellate court will not disturb such an award absent an abuse of that discretion. Schexneider v. Louisiana Department of Health and Hospitals, 660 So.2d 508 (La.App. 3 Cir.1995). Plaintiff contends he was forced to travel to Michigan because defendants refused to take the deposition by telephone. Defendants have failed to demonstrate an abuse of discretion in this regard.
On defendants motion for a new trial the trial judge gave them a credit for $5,000.00 paid by State Farm under the medical payments coverage of Finn's policy. Plaintiff contends that this was a collateral source and not available as a credit. Defendants argue that State Farm cannot be a collateral source against itself. State Farm as medical payments insurer of Finn was in an entirely different posture from its position as Bertucci's liability policy. The premiums for these coverages came from separate sources and the risks involved in the coverages are virtually unrelated. We are not aware of any authority that would somehow make this an exception to the collateral source rule and defendants have cited none.
Accordingly, the judgment appealed from is affirmed but amended to provide that there is judgment in favor of plaintiff and against defendants for $11,400.00 with interest from date of judicial demand until paid plus costs including plaintiff's travel costs for the Michigan deposition in the amount of $1,281.95.
AMENDED AND AFFIRMED.