760 So.2d 1197 (2000)
Clavern ADAMS, et al.
v.
CANAL INDEMNITY COMPANY, et al.
No. 99-1190.
Court of Appeal of Louisiana, Third Circuit.
May 10, 2000.
*1199 Tyron D. Picard, Lafayette, LA, for plaintiff, Clavern Adams.
Bennett B. Anderson, Lafayette, LA, for plaintiff, Cleveland Joiner.
Nicole G. Chaisson, Abbeville, LA, for plaintiff, Christopher Lee.
M. Candice Hattan, Timothy Wayne Basden, Breaud & LeMoine, Lafayette, LA, for defendant, Canal Indemnity Insurance Co.
L. Lane Roy, Lafayette, LA, for defendant, Blake Fontenot, d/b/a Blake's Trucking, and Brent Trahan.
BEFORE: DOUCET, C.J., THIBODEAUX and DECUIR, JJ.
DECUIR, Judge.
Plaintiffs, Clavern Adams, Cleveland Joiner and Christopher Lee, sued Brent Trahan, the driver of an eighteen-wheeler, after being struck by Trahan. Also sued was Blake Fontenot, d/b/a Blake's Trucking, the owner of the eighteen-wheeler, and Canal Indemnity Company, his liability insurer. Both Plaintiffs and Defendants appeal the trial court judgment, entered pursuant to a jury verdict. The jury concluded that each Plaintiff employed fraudulent acts to enhance his claims and apportioned ten percent of fault to Adams, the driver of the Plaintiffs' vehicle, forty percent to Fontenot, and fifty percent to Trahan. The jury awarded full reimbursement for medical expenses to each Plaintiff, but awarded only nominal damages.

FACTS
On October 5, 1993, while traveling on U.S. Highway 167, Clavern Adams' vehicle was struck on the driver's side by the trailer of an eighteen-wheeler which was driven by Brent Trahan and owned by Blake Fontenot. Cleveland Joiner and Christopher Lee were passengers in the white Chevrolet extended cab pickup truck. Joiner and Lee were also employees of Adams' family tree service business. At the site of the accident, Highway 167 is a four-lane concrete roadway within the city limits of Maurice, Louisiana. Brent Trahan was in the left lane when the trailer disconnected, slid into the right lane, and hit Clavern Adams' truck as he passed the eighteen wheeler. The pickup truck was struck on the B-pillar by the corner of the trailer. The B-pillar is located immediately behind the driver's side door. The majority of the impact was absorbed by the B-pillar and resulted in a gouge in the frame of the B-pillar.
As a result of this accident, Clavern Adams was injured. Ultimately shoulder surgery and an anterior cervical fusion were performed. Cleveland Joiner underwent surgery on a L4-5 herniated disc. He also experienced back spasms. Christopher Lee suffered a back and nerve strain. All three Plaintiffs testified that they have been unable to return to the heavy manual labor they had been performing at Adams Tree Service, Clavern Adams' family's business.
A trial was held, at the conclusion of which, Plaintiffs, Joiner and Lee, moved *1200 for a directed verdict on liability against Defendants, Brent Trahan and Blake Fontenot. The court granted Joiner's motion; however, Lee's motion was denied. After substantial argument on the issue, the trial court denied the Plaintiffs' requested jury charge that the time and circumstances surrounding the Plaintiffs' hiring of counsel were irrelevant and should not be considered. Furthermore, over the Plaintiffs' objection, the trial court included a jury interrogatory on fraud.
After several hours of deliberations, the jury found the three Plaintiffs committed fraud as revealed in the responses to jury interrogatories. The jury found Clavern Adams to be ten percent at fault and Brent Trahan and Blake Fontenot ninety percent at fault and awarded damages as follows:

 Clavern Adams
Past and future medical expenses: $45,194.15
Past and future lost wages: $ 0
Loss of future earning capacity: $ 0
General damages: $ 225.00
 __________
 $45,419.15
 Cleveland Joiner
Past and future medical expenses: $38,758.68
Past and future lost wages: $ 0
Loss of future earning capacity: $ 0
General damages: $ 500.00
 __________
 $39,258.68
 Christopher Lee
Past and future medical expenses: $ 9,089.66
Past and future lost wages: $ 0
Loss of future earning capacity: $ 0
General damages: $ 225.00
 __________
 $ 9,314.66

Judgment on the jury's verdict was entered by the trial court and the Plaintiffs' awards were reduced by ten percent. The Plaintiffs were assessed one-third of the court costs (to be divided pro rata). Joiner's post-trial JNOV motions were denied. The Defendants' post trial motions were also denied. All parties appeal. Defendants limited their appeal to quantum; they did not appeal the liability finding of the jury.

SYSTEMATIC EXCLUSION OF AFRICAN-AMERICAN JURORS
By their first assignment, Plaintiffs contend that the trial court erred in allowing the Defendant to systematically exclude African-American jurors in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).
This issue is not properly before this court. Courts of this state have consistently held that a party to a civil suit who seeks review of a Batson/Edmonson issue, must do so by an application for supervisory writs. Freeman v. Humble, 27,419 (La.App. 2 Cir. 9/27/95); 661 So.2d 652; Phillips v. Winn Dixie Stores, Inc., 94-354 (La.App. 4 Cir. 2/23/95); 650 So.2d 1259, writ denied, 95-748 (La.4/28/98); 653 So.2d 599. An appeal after trial is not permitted. Id. Therefore, we decline to consider the merits of this issue.

FRAUD INSTRUCTIONS
By this assignment of error, the Plaintiffs contend the trial court erred in instructing the jury on fraud and allowing an interrogatory on fraud.
The instructions on fraud which were given to the jury stated as follows:
The defendants in this case have made an allegation that one or more of the plaintiffs have committed fraud. Fraud is a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. Fraud in this case must be shown by a preponderance of the evidence, that is, that fraud is more likely than not. Fraud may not be presumed but must be proven. Additionally, the law authorizes proof of fraud by circumstantial evidence, including highly suspicious *1201 facts and circumstances. You may also consider a history of prior acts but only insomuch as those prior acts show a pattern, motive, or whether the plaintiffs had the ability and experience to execute a fraudulent scheme. If you find that fraud on the part of one or more of the plaintiffs exists, you are entitled to consider this in reaching your verdicts to that or those plaintiff by whom you find fault.
This jury charge is taken from the definition of fraud in La.Civ.Code art. 1953 and from the sources cited in Williamson v. Haynes Best Western of Alexandria, 95-1725 (La.App. 4 Cir. 1/29/97); 688 So.2d 1201, writ denied, 97-1145 (La.6/20/97); 695 So.2d 1355. The pertinent inquiry for this court is whether the instruction was so confusing or misleading that the jury was prevented from doing justice. Francis v. Brown, 95-1241 (La. App. 3 Cir. 3/20/96); 671 So.2d 1041. We find the language of this instruction to be neither misleading or confusing. Accordingly, this assignment has no merit.

PRIOR CLAIMS EVIDENCE
Plaintiffs contend the trial court erred in admitting evidence of prior and subsequent accident claims. We disagree.
Daigle v. Coastal Marine, Inc., 482 So.2d 749 (La.App. 1 Cir.1985), writ granted and rev'd in part on other grounds, 488 So.2d 679 (La.1986) delineates the proper use of prior claims evidence at trial and notes the difficulty of determining when such evidence should or should not be allowed:
[T]he need for the exposure of fraudulent claims comes in conflict with the need for the protection of innocent litigants from unfair prejudice. At two extremes the practice is fairly well agreed upon. Thus, when it is sought to be shown merely that the plaintiff is a chronic litigant, or a chronic personal injury litigant, the courts consider that the slight probative value is overborne by the danger of prejudice, and they exclude the evidence. At the other extreme, if it is proved not merely that the former claims were similar to the present claim and were false and fraudulent, then the strong relevance of these facts to evidence the falsity of the present claim is apparent and most courts admit them.
The intermediate situation is the difficult one. The evidence is that the present party, now suing for a loss claimed to be accidental, such as a loss of property by fire, or personal injury in a collision, has made repeated previous claims of similar losses. Here the relevance is based on the premise that under the doctrine of chances repeated injuries of the same kind are unlikely to happen to one person by accident. On the other hand, this evidence is prejudice-arousing and standing alone would seldom be sufficient to support a finding of fraud. It seems that the judge, balancing in his discretion probative value against prejudice, should admit the evidence only when the proponent has produced or will produce other evidence of fraud. [Emphasis added.]
Id. at 750-751, quoting McCormick's Handbook of Law of Evidence, § 196, pp. 466-467 (E. Cleary ed., 2d ed.1972).
In the intermediate situation, when there is evidence of repeated prior claims of a similar nature, the evidence is relevant to show that plaintiff has exceeded his likely chances of repeated, accidental injury of the same kind. In such an event, the evidence may be admitted where the proponent "has produced or will produce other evidence of fraud."
This is just such a case. The Defendants presented evidence that a substantial amount of damage to Plaintiff's vehicle was caused after the accident. This was supported by photographic evidence. Nevertheless, Plaintiffs insist all the damage occurred in the accident. Defendants also introduced evidence that Plaintiffs changed their story about where they were *1202 sitting in the truck to suggest a position nearer the point of impact. Under these circumstances, the trial court did not err in admitting the prior claims evidence. There was substantial evidence of fraudulent acts by the Plaintiffs throughout the investigation of this matter. The probative value of the evidence greatly outweighed the potential prejudicial effect; thus, the evidence was admissible. This assignment has no merit.

ADMISSION OF EVIDENCE
By these assignments Plaintiffs contend the trial court erred: 1) in failing to exclude evidence regarding refusal to submit to pre-litigation independent medical examinations (IMEs) and recorded statements; 2) in admitting evidence concerning Plaintiffs' retention of counsel; and 3) in admitting evidence concerning the stabbing injury suffered by Lee.
At the outset, we note that the trial court's discretion concerning the admission of evidence is vast. Haynes v. Calcasieu Medical Transp. Inc., 97-300 (La.App. 3 Cir. 10/29/97); 702 So.2d 1024, writs denied, 98-355 (La.3/27/98); 716 So.2d 888 and 98-360 (La.3/27/98); 716 So.2d 889. Moreover, the trial court's decision to admit or exclude evidence will not be reversed on appeal unless it is clearly shown that it has abused that discretion. Lemoine v. Hessmer Nursing Home, 94-836 (La.App. 3 Cir. 3/1/95); 651 So.2d 444.
We have carefully reviewed the record in relation to Plaintiffs' assignments. The record reveals that the evidence regarding pre-litigation statements and Plaintiffs' retention of counsel was either raised by Plaintiffs in argument or on cross examination. Likewise, the evidence regarding Lee's stabbing was elicited when the defense exposed Lee's attempt to mislead the jury regarding his disability. The only remaining issue involves the IMEs. Defendants contend that by having surgery without submitting to an IME, the Plaintiffs destroyed evidence vital to their defense. The fact that the Plaintiffs were unwilling to cooperate with IMEs to ascertain the nature and extent of their injuries was clearly relevant to the fraud allegations asserted by the Defendants. Any prejudicial effect would have been merely cumulative in light of other evidence presented. Under these circumstance, we cannot say the trial court abused its vast discretion in admitting the evidence complained of by the Plaintiffs.

MOTION IN LIMINE
Lee contends in this assignment that the trial court erred in denying his motion to exclude the testimony of defense expert, R.L. Fox. It is well settled that the qualification of a witness as an expert is within the trial court's wide discretion, and such a determination will not be disturbed on appeal absent a showing of manifest error. Mitchell v. Fradella, 628 So.2d 1198 (La.App. 3rd Cir.1993), writ not considered, 94-0079 (La.3/11/94); 634 So.2d 405. The fact that Fox's methodology was different from that used by the Plaintiffs' expert does not negate Fox's qualifications based on his experience with the Louisiana State Police. We find no manifest error in the trial court's ruling.

ALLOCATION OF FAULT
The jury concluded that Defendants, Brent Trahan and Blake Fontenot, were fifty percent and forty percent at fault, respectively, and Plaintiff, Clavern Adams, was ten percent at fault. Plaintiffs contend this allocation of fault was erroneous.
Causation and apportionment of fault are questions of fact, and the fact finder's determinations should not be overturned absent a showing of manifest error. Williams v. Allstate, 599 So.2d 478 (La. App. 3 Cir.1992). We are further mandated to view the evidence in the light most favorably supporting the trial court judgment. Rosell v. ESCO, 549 So.2d 840 (La. 1989). If the trial court's determination is reasonable in light of the record reviewed in its entirety, the court of appeal may not *1203 reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
In determining percentages of fault cast, if any, the trier of fact should consider both the nature of the conduct of each party and the extent of the causal relation between the conduct and the damages claimed. Tenpenny v. Ringuet, 95-1036 (La.App. 3 Cir. 3/6/96); 670 So.2d 644, writ denied, 96-0880 (La.5/17/96); 673 So.2d 612. After reviewing the record, we find no manifest error by the trial court.

FINDINGS OF FRAUD
The Plaintiffs contend that the jury erred in finding that they committed fraud. However, we find the record in this case easily supports the jury's findings. There is evidence that the Plaintiffs lied about the extent of damage to their vehicle and their respective locations in the vehicle. There is evidence that the Plaintiffs magnified symptoms, destroyed medical evidence, lied about the nature and extent of their injuries and resulting disabilities, and generally participated in a fraudulent scheme. Under these circumstances, we conclude the jury's findings are supported by the record and, therefore, are not manifestly erroneous. This assignment has no merit.

MOTION TO STRIKE JURY
Lee contends the trial court erred in denying his motion to strike the jury because the good faith amount in dispute was below $50,000.00. We disagree.
It is true that a jury trial is not available where the amount in dispute does not exceed $50,000.00. La.Code Civ.P. art. 1732. However, procedural maneuvers designed solely for purposes of depriving a litigant of his right to a jury trial based on jurisdictional amount are disfavored. Bullock v. Graham, 96-0711 (La.11/1/96); 681 So.2d 1248; Black v. Prudential Property & Casualty Insurance Company, 93-878 (La.App. 3 Cir. 3/2/94); 634 So.2d 1340.
The trial judge concluded that Lee's motion was a mere legal maneuver. He noted that Lee had been ready to proceed to trial when previously scheduled and only thirty or so days before trial sought to strike the jury. The trial court has vast discretion in determining whether to refuse or allow amendments to the pleadings after an answer is filed and its determination will not be disturbed on appeal absent an abuse of that discretion. Tenpenny, 670 So.2d 644. Under these circumstances, we do not believe the trial court abused its discretion in denying Lee's motion to strike the jury. This assignment has no merit.

DAMAGES
Both Plaintiffs and Defendants contend the trial court erred in its award of damages. They contend the trial court's award of all claimed medical damages and minimal general damages is inconsistent. Plaintiffs would have us increase the general damage award, while the Defendants suggest a reduction of special damages. We find neither course of action warranted.
While on its face the award seems inconsistent, the question before us is not a new one. We are particularly impressed with the reasoning of our brethren of the Fourth Circuit who recently visited the same issue:
We are aware of the general rule set forth in Odendahl v. Wild, [418 So.2d 36 (La.App. 4 Cir.1982)], that it is an error of law for the trier of fact to award medical expenses but none for general damages. In that case, the court found that the plaintiff had proven that she suffered a lower back sprain that caused pain and suffering for months and for which she incurred the medical expenses awarded. There was also no issue as to causal connection between the accident and the injury. In Olivier v. Sears Roebuck *1204 & Co., [499 So.2d 1058 (La.App. 3 Cir.1986)], however, the appellate court held that the general rule did not apply where the evidence furnished a reasonable factual basis for the jury's finding that the plaintiff had not sustained injuries to her neck, arms and shoulders as a result of the accident where she had a history of arthritic problems in those areas which were unrelated to the accident.
Most recently in Tchiblakian v. State Farm Mutual Automobile Insurance Company, et al, 97-2287 (La.App. 4 Cir. 4/8/98), 711 So.2d 360, rehearing denied, [writ denied, 98-1689 (La.11/6/98): 728 So.2d 390], we upheld a jury's award to a plaintiff for medical expenses but no general damages, where the jury apparently found the plaintiff's testimony was not credible. In that case, plaintiff filed suit for damages sustained in a car accident. The jury awarded the plaintiff medical expenses of $12,000 and no other damages. On defendant's post-trial Motion for Judgment Notwithstanding a Verdict, the trial judge, sua sponte, awarded plaintiff $25,000 in general damages pursuant to Odendahl. We vacated that part of the trial court's judgment, and after reviewing the entire record, particularly the plaintiff's testimony and the jury's answers to written interrogatories, found the jury did not err in awarding the plaintiff medical expenses but no general damages. The record clearly supported the conclusion that plaintiff's back pain and mental condition were not the result of the accident.
In this case, we find the general rule is not applicable in view of the jury's response to written interrogatories. Specifically, jury interrogatory no. 6 asked, "What do you find to be the amount of Lee Gauthreaux's damages (if any)?" The jury answered as follows:

a. Past medical and hospital expenses: $ actual
b. Pain and suffering, physical and
 mental: $ 0
c. Past and future lost wages: $ 0
d. Loss of earning capacity: $ 0

The most logical explanation for the award based on our review of the record is that the jurors were convinced that plaintiff had sustained no objective injuries as a result of her hospitalization at St. Jude and treatment by Dr. Frank and intended only to award plaintiff a reimbursement or refund for her dissatisfaction with the medical services. The jury was presented with mixed factual circumstances and medical testimony.... Like the juries in Olivier and Tchiblakian, the jury concluded that there were no objective injuries sustained by plaintiff as a result of her hospitalization for which to compensate plaintiff. The jury's finding is reasonable and will not be disturbed on appeal.
Gauthreaux v. Frank, 96-2829, pp. 30-32 (La.App. 4 Cir. 7/1/98); 718 So.2d 985, 998-99; writ denied, 98-2496 (La.11/25/98); 729 So.2d 567.
In this case, the most logical explanation is that the jury concluded that the Plaintiffs sustained some injuries and awarded medicals. However, it is also logical to conclude that the jury considered the fraud committed by the Plaintiffs and determined that further damages were not warranted.

REDUCTION OF AWARD
Joiner and Lee contend the trial court erred in reducing their respective awards in proportion to their immune employer's fault. We agree.
The trial court properly applied La.Civ.Code art. 2324 as it is currently written. However, this accident occurred in 1993, well before the 1996 amendments to the statute. The supreme court has held that the current requirement of article 2324 that a plaintiffs recovery be reduced for the immune employer's fault does not apply retroactively. Aucoin v. Dept. of Transp. & Dev., 97-1938, 97-1967 (La.4/24/98); 712 So.2d 62. Therefore, the controlling law is Cavalier v. Cain's Hydrostatic Testing, Inc., 94-1496 (La.6/30/95); 657 So.2d 975. The Cavalier *1205 court concluded that article 2324 did not require that a plaintiff's recovery be reduced for the immune employer's fault. Id. Accordingly, the trial court erred in reducing the recovery of Plaintiffs, Lee and Joiner, in proportion to the fault of their immune employer, Adams.
The judgment of the trial court is hereby amended as follows: Cleveland Joiner's award of $35,322.76 is increased to $39,258.68 and Christopher Lee's award of $8,383.19 is increased to $9,314.66.

COURT COSTS
Plaintiffs contend the trial court erred in assessing them with one third of the court costs. We disagree.
A trial court is given great discretion in taxing court costs in any manner it deems equitable. La.Code Civ.P. art. 1920. It is the general rule that a party cast in judgment is taxed with the costs of the proceedings. However, the trial court may assess costs in any equitable manner and its assessment will not be reversed on appeal in the absence of an abuse of discretion. Este' v. State Farm Ins. Co., 96-99 (La.App. 3 Cir. 7/10/96); 676 So.2d 850. In this case, where there was considerable evidence of fraud on the part of the Plaintiffs, we find no abuse of discretion in the trial court's assessment of costs.
In light of our previous determinations, Lee's final assignment of error regarding the denial of a directed verdict need not be addressed.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed as amended. All costs of this appeal are taxed to Plaintiffs-Appellants.
AFFIRMED AS AMENDED.
THIBODEAUX, J., dissents and assigns reasons.
THIBODEAUX, J., dissenting.
This case cries out for further appellate attention. The majority sanctions a mockery of fairness and places a judicial imprimatur on a perversion of the judicial process. It misinterprets relevant jurisprudential authority, misapplies the law, even where the law is correctly cited, and ignores record facts when those facts would undermine the majority's Machiavellian conclusions.
The issue of systematic exclusion of African-American jurors is avoided by conveniently concluding that this issue is not appealable; rather, the supervisory writ mechanism should have been utilized. This issue is simply too important to be so cavalierly cast aside. We should address this issue on appeal because "ensuring that no citizen is disqualified from jury service because of his or her race increases public respect for the justice system and the rule of law ... Thus, the issue of purposeful racial discrimination and the use of peremptory challenges is a matter of utmost seriousness affecting not only the trial itself, but the perceived fairness of the judicial system as a whole." State v. Myers, 99-1803, p. 6 (La.4/11/00); 761 So.2d 498, 502. In this case, the trial court committed legal error in prematurely concluding that there was no pattern of racial exclusion in the jury selection in this case. There were only two African-American potential jurors and both were rejected. The defendants argue that the plaintiffs failed to present any evidence to support an exclusion of jurors based on race. On the face of the record, Clavern Adams' attorney explicitly raised the Edmonson objection and alleged a pattern of racial strikes "which essentially knocks blacksboth blacks off the jury." Defendants then bore the burden of articulating a raceneutral explanation for the exclusion of the only two black jurors. Defense counsel failed to provide such an explanation.
The trial court's interpretation of Edmonson in the following exchange between *1206 the court and Adams' counsel is clearly wrong:
Counsel: Your Honor, I would like to put something in the record, because I think the standard is that once we have alleged a pattern of strikeof racial strikes, that the burdenEdmondson [sic] versus Leesville Concrete says the burden then shifts to the striking party to offer the Court a race neutral reason for the strikes.
Court: No, that's not what it says. It says, first of all, the Court determines if there's a pattern. If there's no pattern, it doesn't go any further.
. . . .
Court: The Court rules there is no pattern. They struck four whites and two blacks, no pattern.
The trial court misconstrued the analysis of Edmonson. The court was permitted to make a determination of whether plaintiff's counsel met his burden only after defense counsel offered a race-neutral explanation, not in place of the explanation.
In short, the trial court violated the Equal Protection Clause as it allowed the defendants the use of peremptory challenges to systematically exclude the only two African-American jurors, without giving a race-neutral explanation and without even requiring the need to provide such a rationale.
In Myers, which I recognize obviously to be a criminal case, the Louisiana Supreme Court observed that the trial court did not rule on the defendant's establishment of a prima facie case or required the prosecutor to provide race-neutral reasons for its peremptory strikes. The supreme court concluded that "when a Batson challenge is made, it is incumbent upon the trial judge to address the challenge, either by ruling on whether a prima facie case of discriminatory intent has been made or by requiring race-neutral reasons for the strikes." Id. at 502. (emphasis added). Myers further observed that "[i]n this case, we have no rulings or observations from the trial judge to review. This failing on the part of the trial court raises serious federal constitutional equal protection issues affecting the rights of both the defendant and the excused venirepersons. In this case, specter of racial discriminatory intent was raised, which cannot be discounted from a record where the trial judge failed to rule on the objections." Id.
It is interesting to note that the issue of the illegal use of racially-motivated peremptory strikes was considered on appeal by the Louisiana Supreme Court after a full trial on the merits. I see no good reason to distinguish between a civil trial and a criminal trial in determining the method by which an appellate court should review Batson/Edmonson challenges.

Fraud Instructions
The majority dismisses the plaintiffs' challenges against the fraud instructions by reasoning that the fraud definition was taken from La.Civ.Code art. 1953 and they were neither misleading nor confusing. However, just because it was taken from the definition of fraud and the Civil Code does not make it correct for use in a civil trial with these factual circumstances.
Furthermore, the fraud instructions were confusing and misleading. If a court gives misleading, confusing instructions or omits an applicable essential legal principle, then such instructions do not adequately set forth the law and constitute reversible error. Louisiana Smoked Products, Inc. v. Savoie Sausage and Food Products, 95-932, p. 4 (La.App. 3 Cir. 3/27/96); 673 So.2d 248, 251 (emphasis added). Ultimately, the pertinent inquiry is whether the jury was misled to such an extent as to be prevented from doing justice. Francis v. Brown, 95-1241, p. 5 (La. App. 3 Cir. 3/20/96); 671 So.2d 1041, 1045. The inartful wording of the jury instructions left the jurors with a broad and an inadequate interpretation of the instructions and their application to the issues which were presented by the evidence and *1207 testimony. The instructions were so broad that, according to the jury's findings, any inconsistency in any of the plaintiffs' testimonies could conceivably be proof of fraud as to all three plaintiffs.
The misleading instructions lead to a "yes" vote on the jury interrogatory regarding whether each plaintiff committed fraud. This interrogatory was meaningless and led to an incomprehensible jury verdict. A "yes" vote was not dispositive of any issue, i.e., liability, comparative fault, cause-in-fact, or, in this case, damages. Defendants argue that a "yes" response referred to the plaintiffs' intent to commit fraud. I disagree. "Intent" does not function in this case because there was no history of prior similar acts of fraud on the part of Adams, Joiner or Lee.
The trial court's instructions were erroneous and unnecessary. My review of the record reveals there was no evidence presented at trial which would plausibly give the trial judge reason to provide any jury instructions on fraud. The instructions referred to a history of prior acts; however, there was none shown which would prove the plaintiffs committed fraud. While there was evidence of several pre and post-accident injury claims filed by Adams, there was no evidence demonstrating the perpetuation of fraud in these accidents or claims. The trial judge is mandated to instruct the jury on the correct principles of law applicable to the issue presented by the pleadings, the evidence and the testimony. Louisiana Smoked Products, Inc., p. 4, at 251. Since there was no history of prior, similar acts, the instructions were useless and prejudicial. The majority quotes the correct law on the use of prior claims evidence, but unfortunately misapplies the rules.
Under Daigle v. Coastal Marine, Inc., 482 So.2d 749 (La.App. 1 Cir.1985), writ granted and rev'd in part on other grounds, 488 So.2d 679 (La.1986), such evidence is admissible when the proponent proves that prior claims were similar and fraudulent. The majority correctly observes that "[i]n the intermediate situation, when there is evidence of repeated prior claims of a similar nature, the evidence is relevant to show that plaintiff has exceeded his likely chances of repeated, accidental injury of the same kind. In such an event, the evidence may be admitted where the proponent `has produced or will produce other evidence of fraud.'" It incorrectly applies this principle.
McCormick's Handbook of Law & Evidence, § 196, pp. 833-834 (John W. Strong, ed., 4th ed.1992), observes that the trial judge must balance the probative value of the evidence against its prejudice and admit the evidence "only if the probability of coincidence seems negligible or if the proponent has distinct evidence of fraud." McCormick acknowledges that the existence of a series of accidents involving the same person does not make it less probable that the next accident actually occurred:
If the model holds, the low probability that a long series of similar, negligently caused accidents will happen to the same person does not lower the probability that a particular one ... occurred. After all, the fact that the probability of the series of ten heads [from a coin toss] is only 1/1024 does not change the probability (1/) for a head on a particular toss, and the fact nine heads in a row have appeared does not make it less probable that the coin will come up a head on the tenth toss.

Id. at 833, n. 6.
Williamson v. Haynes Best Western of Alexandria, 95-1725 (La.App. 4 Cir. 1/27/97); 688 So.2d 1201 clearly shows the error of the trial court in this case. In Williamson, the plaintiffs contended that the jury's verdict, finding that Sonya Williamson was injured in her hotel room and that the accident was staged or fraudulent, was inconsistent. Williamson claimed that she was electrocuted on July 21, 1989 while attempting to turn off the light in her room in the Haynes Best Western *1208 Motel in Alexandria and filed suit. The defendants filed a third party demand against Robert Williamson, Sonya's husband, alleging that his actions prevented the motel staff from entering or inspecting the motel room inhabited by the Williamson family and thereby preventing the staff from discovering and remedying the alleged defective condition. Haynes Best Western also alleged that Robert refused to allow Sonya to obtain medical tests and treatment which jeopardized her condition. The defendants argued that fraud was committed or that her accident was staged. She had no burns on her body, and no entrance or exit wound. The case was removed to federal court where related cases were pending.[1] In those related cases, Robert Williamson was acquitted on charges of insurance fraud by the U.S. Attorney's Office in 1990. In 1994, Robert had been indicted on charges involving prescription fraud; the United States Attorney dismissed the charges.
The evidence of prior claims was admissible in Williamson because the evidence was introduced to show a pattern and practice involving acquisition of large amounts of insurance, followed in close order by an accident, usually either unwitnessed or witnessed by a party involved in some capacity in other related accidents, for which injuries were claimed but in connection with which no extended hospitalization occurred, and which usually resulted in a relatively modest settlement readily accepted by the allegedly injured party. There was substantial evidence of fraudulent participation by the plaintiffs in several instances. The probative value of the evidence greatly outweighed the potential prejudicial effect; thus the evidence was admissible. In the present case, however, there was no evidence presented which would indicate a pattern of activity involving prior and subsequent fraudulent accidents and claims.

Admission of Evidence
The majority next concludes that the trial court was correct in admitting prelitigation independent medical examinations and recorded statements and in allowing evidence of the plaintiffs' retention of counsel. It justifies these actions on the basis of the "abuse of discretion" standard. However, the discretion on evidentiary matters which is normally accorded to a trial judge does not relate to a question of law. A trial judge has no discretion in refusing to apply the law or in applying the wrong law. This is another example where the majority cavalierly rubber-stamps the wrong legal decisions of the trial court. The majority is simply wrong.
The trial court and the majority erred in failing to exclude evidence regarding refusal to submit to pre-litigation independent medical examinations (IME's) and recorded statements. When the mental or physical condition of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical ... examination by a physician.... La.Civ.Code art. 1464 (emphasis added).
Defendants insist that despite their and their adjustor's best efforts, the plaintiffs underwent non-emergency surgery, thus eternally destroying any chances of determining whether the surgeries were essential. Defendants' best efforts were not sufficient.
In Matter of Petition of State Farm Mut. Auto. Ins. Co., et al, 98-75 (La.App. 5 Cir. 3/25/98); 708 So.2d 1282 held that an insurer is not entitled to a pre-suit medical examination of the plaintiff if the plaintiff has not placed his medical condition in controversy by filing suit. The court found the insurer was attempting to conduct full discovery before a lawsuit had been filed. A plaintiff only puts his medical condition in controversy by actually filing suit. Williams v. Smith, 576 So.2d 448 (La.1991). Thus, the defendants were not entitled to pre-litigation IME's because the plaintiffs had not actually filed suit.
*1209 Louisiana law provides a working process which defendants should have utilized in their best efforts to possibly subject the plaintiffs to a pre-litigation recorded statement. The discovery proceeding sanctioned by La.Code Civ.P. art. 1429 permits a verified petition to be filed to perpetuate testimony in a court in which an anticipated action might be brought. (emphasis added). The primary purpose of Article 1429 "is to preserve testimony that might otherwise be lost to a prospective litigant." Petition of State Farm Mut. Ins. Co., p. 2, at 1324. Pre-litigation perpetuation of testimony is not a substitute for discovery, but it is made available in special circumstances to preserve testimony that would otherwise be lost. Gaines v. Bruscato, 30,340 (La.App. 2 Cir. 4/8/98); 712 So.2d 552.
By filing a petition with the court, the defendants would have had an opportunity to compel the plaintiffs to submit to a recorded statement in anticipation of a lawsuit, if the court would have found that extenuating circumstances were in existence. However, Canal Indemnity's claims adjustor, Joey Livaudais, simply requested a recorded statement. This request was refused by the plaintiffs' counsel, but Canal Indemnity made no attempt to petition the trial court for the right to take a statement. As such, the trial court was in error to allow testimony from Livaudais pertaining to the plaintiffs' refusal to submit to his request for a recorded statement.

Admission of Evidence Related to Plaintiffs' Retention of Counsel
The court granted a Motion in Limine prior to trial in which the plaintiffs sought to prevent the defendants from referring to the timing and circumstances of employing counsel, and the referral by counsel to a doctor. Plaintiffs consistently objected at trial to the testimony elicited and argued before the jury that the plaintiffs' claims were fraudulent because they retained counsel the day after the accident. Allowing this testimony and argument was in direct violation of the motion which had previously been granted. Moreover, individuals have a right to seek the advice of counsel without fear that their actions may later subject them to a claim of fraudulent conduct. The attorney-client relationship is sacrosanct. I absolutely reject the dilution of this relationship in a civil proceeding as the majority has done. To do so irrationally and impermissibly inhibit one's access to counsel. I decline to engage in such foolhardy conduct.
The majority says that the evidence regarding the pre-litigation statements and plaintiffs' retention of counsel was the plaintiffs' fault because these issues were raised by the plaintiffs in argument or on cross-examination. Again, the majority is wrong. Plaintiff Joiner's Motion in Limine arguing for the exclusion of any reference to pre-litigation statements or independent medical examinations and retention of counsel was denied by the trial court. The attorney for the defendants referred to these matters in opening statement. The objection on this issue by plaintiffs' counsel was overruled. Thus, Plaintiff Joiner was required to do something, i.e., make reference to these pre-litigation actions, to rebut the prejudicial comments made by the defense counsel in the opening statement. The majority's view reflects a lack of understanding of practical and legally correct trial technique.

Allocation of Fault
The jury concluded that defendants, Brent Trahan and Blake Fontenot, were fifty percent and forty percent at fault, respectively and plaintiff, Clavern Adams, was ten percent at fault. The majority affirms. I find no evidence or testimony to support this finding of comparative negligence.
The record overwhelmingly reveals that but for the disengagement of the eighteen-wheeler's fifth wheel, the trailer would not have detached from Trahan's truck and hit Adams' truck. Clavern Adams remained in his traveling lane while the eighteen-wheeler was found across the highway dividing *1210 line into Adams' lane. The investigating officer, Chief Rost, declared, "it was clear-cut that the trailer had come unhooked from the truck. It was the truck's fault."
After reviewing the record, I conclude the trial court's allocation of fault was clearly erroneous. Accordingly, I would find the defendants, Blake Fontenot and Brent Trahan, were one hundred percent at fault. Each would be allocated fifty percent of the fault.
Finally, if the errors cited in this dissent are heretofore insufficient to warrant a reversal, then surely, the award of general damages to plaintiffs Adams, Joiner, and Lee were abuses of discretion. The jury obviously felt, in answering the interrogatories on the special verdict form, that the medical expenses incurred by these plaintiffs were causally related to the accident. To award such de minimus amounts is tantamount to a failure to award general damages. It is well-settled that the failure to award general damages where the jury awarded special damages is a clear abuse of the jury's discretion. Similarly, to award such de minimus damages is a clear abuse of the jury's discretion. Olivier v. Allstate Insurance Company, 95-306 (La.App 3 Cir. 10/4/95); 663 So.2d 207.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] It was later remanded to state district court.