h DAVID S. GORBATY, Judge.
Patricia Ice and Kiva Dennis appeal a judgment wherein they were awarded $30,000 and $15,700, respectively, arguing that the jury failed to compensate them for past and future medicals related to an aggravation of their pre-existing injuries. Plaintiffs’ further argue that the trial court erred in not assessing all costs to the defendants. For the following reasons, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY:
Patricia Ice was the driver of a vehicle that was rear-ended by a vehicle owned by Dry Klean Carpet Maintenance, Inc., and driven by Paul Faciane. Kiva Dennis was a passenger in Ms. Ice’s vehicle. Ms. Ice and Ms. Dennis filed individual lawsuits against Paul Faciane, Dry Klean Carpet Maintenance, Inc., and State Farm Mutual Automobile Insurance Company. The cases were consolidated for trial.
During the course of the trial, the plaintiffs agreed to dismiss Dry Klean Carpet Maintenance, Inc., from the lawsuit. The jury returned a verdict finding Paul Fa-ciane to be totally at fault for the accident. It awarded Patricia Ice $30,000 | ¡.and Kiva Dennis $15,700. The trial court made the jury verdict the judgment of the court. After the trial court signed the judgment on November 12, 2002, the parties noted that the judgment inadvertently cast Dry Klean Carpet Maintenance, Inc., in judg *598 ment, despite the prior dismissal from the suit.
On November 22, 2002, plaintiffs filed a Motion for JNOV and to have the trial court reassess court costs. Plaintiffs argued that the general damages awarded by the jury were too low, that the jury failed to award all medical expenses incurred, and that the trial court erred in not assessing all costs of court to the defendants. Plaintiffs also noted that the judgment of November 12 incorrectly named Dry Klean Carpet Maintenance, Inc., in the judgment instead of Paul Fa-ciane.
After a hearing, the trial court signed a Judgment on January 22, 2003, denying plaintiffs’ Motion for JNOV, and amending the November 22, 2002, judgment to cast Paul Faciane in judgment in place of Dry Klean Carpet Maintenance, Inc. The court also signed an Amended Judgment that same day recognizing the change in the party’s cast in judgment, and otherwise adopting the November 22, 2002, judgment in its entirety.
Plaintiffs’ appeal the Amended Judgment.
DISCUSSION:
This ease contains a procedural issue that must be addressed before proceeding to the merits. On February 4, 2003, plaintiffs filed a Motion for Devolutive Appeal, which was signed by the trial court the same date. | s Additionally, plaintiffs filed a Designation of Contents of Record indicating that it wished only the following items be included in the record on appeal: 1) medical depositions, 2) medical bills, 3) medical records, 4) the motion for JNOV, 5) the Judgment of January 22, 2003 (denying plaintiffs’ motion for JNOV), 6) the Amended Judgment of January 22, 2003, 7) the motion and order for appeal, and, 8) the designation. On February 5, 2003, defendants also filed a designation of record requesting that the entire record, not just the portions designated by plaintiffs, be included in the appeal record. On March 5, 2003, plaintiffs filed a First Supplemental Motion for Devolutive Appeal, which was signed by the trial court the same date.
In the first motion for appeal, plaintiffs designated as issues for appeal: 1) the failure of the jury to award plaintiffs’ full damages for past and future medical expenses, and 2) the failure of the trial court to cast defendants in judgment for all court costs. In their supplemental motion for devolutive appeal, plaintiffs stated that they also wished to appeal the trial court’s inadequate general damage award.
Defendants argue that because plaintiffs designated only certain portions of the trial court record for this court to review, and made specific assignments of error in their motion for devolutive appeal, which defendants argue is tantamount to a La.Code Civ. Proc. art. 2129 statement, plaintiffs cannot enlarge the issues to be reviewed by this court in a supplemental motion for appeal. Defendants further argue that the trial court no longer had jurisdiction when it signed the supplemental motion for appeal. We agree.
14Louisiana Code of Civil Procedure art. 2088 provides that the trial court’s jurisdiction is divested, and that of the appeal court attaches, on the granting of the order of appeal. Once the order of appeal is signed, the trial court has jurisdiction only over limited matters listed in the article. The trial court does not have jurisdiction to sign a “supplemental” motion for appeal. Plaintiffs’ argument that because they filed their supplemental motion within the sixty day period for filing a motion for devolutive appeal has no merit.
Plaintiffs’ further argument that this court can “second the motion” of the trial *599 court is likewise without merit. Under certain circumstances, an appellant can request, by way of a motion filed in the appellate court, that the record on appeal be supplemented. However, those circumstances do not exist in this case. By their own admission, plaintiffs designated only a portion of the record on appeal as a way of saving money. After the defendants requested that the entire record.be lodged, plaintiffs attempted to appeal the general damage award by filing a supplemental motion for appeal. As stated herein, this is procedurally improper because 1) the trial court did not have jurisdiction to sign a “supplemental” motion for appeal; and, 2) plaintiffs’ had already designated the issues they wished addressed by this court on appeal.
| sAs such, the only issues to be addressed by this court are 1) whether the trial court erred in its award for past and future medical expenses; and, 2) whether the trial court erred in ordering each party to pay its own court costs.[1]
Plaintiffs argue that the jury erred in not awarding the full amount of medical expenses resulting from Paul Faciane’s acts of negligence. This argument is premised on the jury’s affirmative answer to the following interrogatory:
Did you find the KIVA DENNIS/PATRICIA ICE suffered any injury or aggravation of a pre-existing injury as a result of the accident of August 20, 1999?
What plaintiffs fail to recognize is that the question asked of the jury is two-fold, that is, the word “or” placed between “any injury” and “aggravation of a pre-existing injury” is disjunctive. Thus, the jury was free to conclude that the accident in question caused new injuries and aggravation of pre-existing injuries, or new injuries, or only aggravation of pre-existing injuries. Based on the damages awarded, it is apparent that the jury found plaintiffs incurred only new injuries. Consequently, the jury awarded special damages relative only to the new injuries.
A. Kiva Dennis
Dr. Warren R. Bourgeois, a board certified orthopedic surgeon, testified that he was already treating Ms. Dennis for injuries sustained in an April 1998 accident, when he began treating her additionally for the subject August 1999 accident. It was his opinion that she suffered an aggravation of the injuries sustained in the | ^earlier accident, as well as new injuries. His opinion was based on the fact that the prior accident caused lower back problems, and, following the subject accident, Ms. Dennis complained of pain near her right scapula and neck. Dr. Bourgeois did state that Ms. Dennis had complained prior to the subject accident that her. low back problems were aggravated by certain physical activities and emotional stress. Dr. Bourgeois was aware that Ms. Dennis’ husband died two days before the subject accident and that she was experiencing severe emotional stress.
Dr. Bourgeois testified that he diagnosed a new injury to Ms. Dennis’ shoulders and neck as a result of the subject accident. Although Dr. Bourgeois opined that the subject accident may have aggravated the pre-existing injury, he also stated that the psychological effects of Ms. Dennis’ husband’s illness and death, and her own illness (complications from hepatitis C) contributed to the perpetuation of her prior injuries.
*600 On cross-examination, Dr. Bourgeois admitted that he would have continued treating Ms. Dennis in exactly the same manner, regardless of the August 20, 1999, accident.
Dr. Stewart Altman, a board certified general surgeon who testified that he has not performed surgery in the 12 or 13 years prior to the deposition, testified that he initially treated Ms. Dennis following an April 1998 accident. He treated her again following the August 20, 1999, accident. She complained of headaches, neck, back and shoulder pain. X-rays revealed degenerative changes of the cervical spine, which the doctor stated were not related to the August 1999 accident. The lumbar spine x-ray was normal. Following the subject accident, Dr. Altman noted Ms. Dennis’s significant history of injury to her neck and back from 17the earlier accident. Ms. Dennis told Dr. Altman that prior to the subject accident, her neck and shoulders were asymptomatic, but that she was being actively treated for continued low back problems. She claimed that the subject accident caused a return of the shoulder pain and headaches. He diagnosed a newly incurred cervical and trapezious sprain and an aggravation of the resolving lumbosacral sprain.
B. Patricia Ice
Dr. Charles R. Billings, a board certified orthopedic surgeon, first saw Ms. Ice in May of 1998. She related that she had had prior surgery for scoliosis, and had developed increased lower back pain during the two years prior to the visit. She did not relate any pain in the cervical region. Several months into her treatment she began to complain of neck pain, which she related to job stress. Following the subject accident, Ms. Ice returned to see Dr. Billings for an unscheduled visit. She related that she had been involved in an automobile accident and was now experiencing neck and back pain. Dr. Billing’s opined that Ms. Ice’s strain of her neck and back were new injuries, unrelated to her previous disorder.
Dr. Stewart Altman also treated Ms. Ice following the August 1999 accident. He first saw her in November of 1999. She gave a history of having been involved in an automobile accident in August of that year, and reported that Dr. Billings had seen her twice following the accident. Ms. Ice also gave Dr. Altman the history of her scoliosis and subsequent surgery. She admitted that she had back pains prior to the accident, but reported that her pains were increased due to the accident. Dr. Altman testified that he related Ms. Ice’s symptoms to the August 1999 accident based on the history given.
|sOn cross-examination, Dr. Altman admitted that he did not know Ms. Ice was complaining to Dr. Billings about neck pain prior to the subject accident.
Dr. Warren R. Bourgeois testified that Ms. Ice gave a history of having undergone surgery in 1984 to correct scoliosis. She did not give a history of any prior automobile accidents. He did not begin to treat Ms. Ice until over a year after the subject accident.
The physical examination revealed negative neurological findings, but Ms. Ice did have tenderness between her ribs and over the lower spine. His review of x-rays taken previously revealed the solid spinal fusion and significant degenerative changes in the lumbar spine region. He also reviewed a CT scan taken earlier, and noted no spinal stenosis or herniation. He recommended either facet blocks or nerve blocks; Ms. Ice chose to have facet blocks. These seemed to help relieve some of her pain in the lower back. However, Ms. Ice continued to complain of pain in her buttock and thigh. Dr. Bourgeois testified *601 that, based on Ms. Ice’s history, the subject accident aggravated her prior back problems. At some later point in her treatment, Ms. Ice told Dr. Bourgeois that she had been diagnosed with hepatitis C, and could no longer take the anti-inflammatory drugs previously prescribed. She also continued to complain of pain in her hip, which Dr. Bourgeois did not relate to the automobile accident. At the time of the deposition, Ms. Ice was scheduled to have more facet blocks.
On cross-examination, Dr. Bourgeois stated that he did not know how Ms. Ice was referred to him, nor was he aware of Ms. Ice being treated by Dr. Billings prior to the August 1999 accident. He did not consult with Dr. Billings or review his medical records. Dr. Bourgeois reviewed some of Dr. Billings’ records during his deposition, and agreed that Ms. Ice was apparently being treated for low back |nand neck problems prior to the August 20, 1999 accident. Dr. Billings’ records indicated that Ms. Ice was filling prescriptions for Vicodin, Celebrex and Butalbital, a narcotic headache medication, and that she had already received some sort of injections, with a recommendation for additional injections. Dr. Bourgeois could not objectively quantify the level of aggravation Ms. Ice may have experienced because of the subject accident. He admitted that she was apparently having pain, possibly from a degenerative condition, prior to the accident. He could only rely on her personal assessment of how much the pain had increased after the accident. Dr. Bourgeois also admitted that he was not aware that Ms. Ice had been hit as a pedestrian by a car in March of 2000.
Dr. John F. Nitsche, an arthritis and immunology specialist to whom Dr. Bourgeois referred Ms. Ice, opined that her “diffuse musculoskeletal pain” was a side effect of Ms. Ice’s hepatitis C infection. He did not relate her pain to the automobile accident of August 20,1999.
After reading the medical records and doctors’ reports, we conclude that the jury’s finding that no causal relationship existed between the August 20, 1999, accident and the claimed aggravation of preexisting injuries is a reasonable one. Therefore, we find no manifest error in awarding past and future medicals based on newly incurred injuries only.
Plaintiffs also argue that the trial court erred in not assessing all costs of court to defendants. As stated recently by this court, “[generally, the party cast in judgment is taxed with the costs of the proceedings. However, the trial court may assess costs in any equitable manner, and its assessment will not be reversed on appeal in the absence of an abuse of discretion.” Tadlock v. Taylor, 2002-0712, p. 12 (La.App. 4 Cir. 9/24/03), 857 So.2d 20, 30, citing La.Code Civ. Proc. art. 1920; Adams v. Canal Indemnity Co., 99-1190, p. 13 (La.App. 3 Cir. 5/10/00), 760 So.2d 1197, 1205. Considering the trial court’s vast discretion in assessing court costs, and the fact that plaintiffs have provided no evidence to prove that the trial court abused that discretion, we find no error in the distribution of court costs in the court below.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.

. Although plaintiffs designated the motion for JNOV and supporting memoranda to be included in the record on appeal, they did not designate as an issue for appeal the denial of the motion by the trial court. Thus, we will not review this issue.