FREDERICKA HOMBERG WICKER, Judge.
 

 |2Peyton Place Condominium Association, Inc.
 
 [1]
 
 (the “Association”) filed this suit against Robert Guastella (“Guastella”), Peyton Place, Inc. (“PPI”), and 1-10, Inc.
 
 [2]
 
 (“1-10”), alleging that each defendant was liable to it for unpaid condominium fees, late fees, and the attorney’s fees incurred as a result of this litigation.
 
 [3]
 
 All three defendants reconvened against the Association, alleging that the Association was liable for unpaid rent on a party room and a recreation room that each of the defendants had owned at one point in time. The suit was consolidated with two separate suits filed by 1-10. In both of the consolidated suits, 1-10 alleged that the Association recorded illegal statutory privileges on condominium units that it owned. The trial court found that the Guastella defendants were liable to the Association for condominium fees and that the Association was not liable to the RGuastella defendants for unpaid rent. In addition, the trial court awarded the Association attorney’s fees and costs. The trial court also found that the Association was liable to 1-10 for recording an illegal privilege. This appeal ensued.
 

 The Guastella defendants assign as error the trial court’s judgment as to liability to the Association for unpaid condominium fees, the denial of their unpaid rent claims,
 
 *137
 
 and the trial court’s award of attorney’s fees and costs to the Association. The Association assigns as error the trial court finding that it is liable to I — 10 for recording an illegal privilege, the trial court’s ruling that the Guastella defendants were not a single entity, and a judgment of the trial court quashing a subpoena. For the foregoing reasons, we affirm in part, reverse in part, and render. In addition, we grant the Association’s Motion for Partial Dismissal, the merits of which are discussed below.
 

 FACTS AND PROCEDURAL HISTORY
 

 The relevant facts are these. In 1969, Guastella incorporated 1-10 with his brother and father. I — 10 was originally formed to build and develop a Howard Johnson’s hotel near the intersection of Veterans Boulevard and Interstate 10 in Metairie. Management Equities Corporation (“MEC-I”) was incorporated on February 13, 1976 for the purpose of purchasing and managing an apartment complex located at 1161 Lake Avenue in Metairie. MEC-I purchased the apartment complex on May 27,1976.
 

 Several years later, Guastella began to investigate the feasibility of turning the 1161 Lake Avenue apartment complex into a condominium complex. Guastella merged MEC-I with 1-10 in 1979. Although I — 10 was the surviving corporation from this transaction, Guastella changed the corporate name of 1-10 back to Management Equities Corporation (hereinafter referred to as “MEC-II”). | ^According to Guastella, the purpose of these transactions was to utilize the losses of I — 10 against any profits that were expected to arise from the development of the condominium. Guastella later changed the corporate name of MEC-II back to 1-10, Inc., the defendant herein.
 

 Guastella incorporated PPI on September 28, 1979. At that time, Guastella owned seventy percent of the shares of PPI and his former associate Charles Ko-vacs owned thirty percent of the shares. In addition, Guastella served as the corporation’s president and Kovacs served as its secretary and treasurer. On October 18, 1979, PPI purchased the condominium complex from MEC-II in exchange for executing a $2,346,651.00 secured note in favor of MEC-II and assuming a $1,153,348.01 note in favor of Pan American Life Insurance Company.
 

 Guastella filed a condominium declaration with the 24th Judicial District Court Clerk of Court’s Office on September 5, 1979, which created the Association. Shortly thereafter, PPI began marketing the condominium units and selling them to consumers (the condominium complex will hereinafter be referred to as “Peyton Place”). When buyers purchased condominium units at Peyton Place, they paid five percent of the purchase price as a down payment, with the rest being financed by PPL If the purchaser was able to pay off the rest of the note to PPI, PPI would pledge the mortgage of the purchaser’s unit to Pan American Life Insurance Company to secure a partial release of its debt on the $1,153,348.01 note.
 

 Guastella had previously lived in the apartment complex before Peyton Place was created. After Peyton Place was created, Guastella, PPI, and I — 10 each continued to own Peyton Place units. In 1980, Guastella decided to designate one unit as a party room and one unit as a recreation room to make individual condominium units more desirable to potential Peyton Place buyers. Thus, on May |51, 1980, Guastella purchased two Peyton Place units from PPI to convert into a party room and a recreation room. No money changed hands during this transaction; Guastella used funds from PPI to finance the sale and wrote off $120,000 worth of
 
 *138
 
 debt owed to him personally by PPL Guas-tella then spent several months renovating the units in order to make them suitable for them designated functions. On November 10, 1980, Guastella sold the party room and the recreation room to MEC-II. Again, no money changed hands; in exchange for receiving title to the party room and recreation room, MEC-II can-celled a $219,000 note which evidenced a debt that Guastella owed to MEC-II.
 

 On the same day he purchased the recreation room and party room from MEC-II, Guastella leased both rooms to the Association for a term of fifty years. The terms of the lease dictated that the Association would pay Guastella $1,260 per month, with rent increases every five years. The Association never paid any rent to MEC-II, Guastella, or PPI, nor did MEC-II, Guastella, or PPI ever pay any condominium fees to the Association. Guastella alleges that he did not require the Association to pay rent for the party room and the recreation room in exchange for not paying condominium fees on Pey-ton Place units that he owned personally. With respect to four units owned by PPI, Guastella alleges that he did not require PPI to pay condominium fees because PPI provided cash advances to the Association every year to equalize the Association’s annual operating deficit. Guastella alleges that MEC-II paid condominium fees for the units it owned but could not provide the trial court with records to verify the allegation.
 

 After Guastella sold the recreation room and the party room to MEC-II, all sales of Peyton Place condominium units were made “subject to” the May 1, 1980 lease. MEC-II owned the party room and the recreation room from November 20, 1980 until October 6, 1986, at which time it sold both units to PPI. PPI owned | (iboth rooms until May 12, 1988 when it transferred all title, rights, and interest in both rooms to Pan American Life Insurance Company via a
 
 dation en paiement.
 

 Throughout the course of the 1980’s, the Peyton Place complex allegedly deteriorated to such an extent that Jefferson Parish officials threatened to condemn the property on several occasions. Guastella had controlled the presidency of the Association since it was created in the condominium declaration. In 1989, Association members declined to reelect Guastella to the Association presidency and installed them own board of directors after Guastel-la resigned. Guastella continued to own Peyton Place units but had no further role in the management of Peyton Place after 1989. PPI and I — 10 also continued to own Peyton Place units.
 

 On December 12, 1992, the Association filed a Petition for Damages against Guas-tella, 1-10, and PPI. The petition alleged that Guastella, PPI, and I — 10 had collectively owned eleven Peyton Place units at all pertinent times prior to filing. The Petition sought condominium fees dating back to 1979, late fees, special assessments levied against all Peyton Place owners in 1989, 1990, and 1991, and judicial interest. In addition, the petition alleged that Guas-tella treated PPI and 1-10 as his personal assets and sought to hold Guastella liable in solido with PPI and 1-10.
 

 Guastella reconvened against the Association on February 24, 1993 for the rent due under the terms of the May 1, 1980 lease of the party room and the recreation room.
 
 [4]
 
 The reconventional demand alleged that the Association owed past due rent under the lease and that the rent claims should be treated as an offset on past due condominium fees. Guastella fur
 
 *139
 
 ther alleged that the rent owed by the Association exceeded his past due condominium fees. Guastella filed a Motion for Summary Judgment seeking judgment for unpaid rent and future accelerated rental 17payments. The Association filed a Motion for Partial Summary Judgment/Declaratory Judgment asking the court to rule that Guastella’s right to collect rents terminated on November 20, 1980, the day he sold the recreation room and the party room to MEC-II.
 

 On March 15, 1995, the trial court denied Guastella’s Motion for Summary Judgment and granted the Association’s Motion for Partial Summary Judgment/Declaratory Judgment. The trial court ruled that only the title owner of the party room and recreation room was entitled to collect rent due under the lease. In his Reasons for Judgment, the trial judge noted that the right to collect rentals was transferred in the sale and that the “subject to” language was “insufficient to entitle Guastella to the rentals.” Thus, Guas-tella, MEC-II, and 1-10 were only entitled to collect rental payments for the time that each was the title owner of the recreation room and the party room. Guastella appealed the judgment of the trial court. This Court affirmed.
 
 Peyton Place Condominium Ass’n, Inc. v. Guastella,
 
 95-396 (La.App. 5 Cir. 1/17/96), 668 So.2d 1174. On April 21, 1997, PPI and MEC-II filed a Motion for Leave to file a Reconventional Demand regarding their claims for rent due under the terms of the lease agreement. The Motion for Leave was granted by the trial court.
 

 The original case was consolidated with two additional cases. On December 20, 2004, I-10 filed a Petition for Damages against the president and secretary of the Association. The Petition alleged that the Association filed three illegal statutory privileges and an illegal Notice of Lis Pendens on a Peyton Place unit that I- 10 owed.
 
 1-10, Inc. v. Williams, et al.,
 
 615-106 (La. 24th J.D.C.). More specifically, I-10 contended that the privileges and Notice of Lis Pendens were illegal because they were filed by the Association before I — 10 became the owner of the unit. This case was consolidated with the original case on April 26, 2005.
 

 |sOn January 28, 2007, 1-10 filed a Petition for Damages against the Association and Dalton Truax, the manager of the Peyton Place facility. The Petition alleged that Dalton Truax illegally placed a privilege of $142,242.97 on a Peyton Place unit that I-10 owned.
 
 I-10, Inc. v. 1161 Lake Condominium Ass’n, et al.,
 
 640-855 (La. 24th J.D.C.). Specifically, 1-10 contended that Dalton Truax had failed to comply with La. R.S. 9:1123.115 A(3), which provides that a condominium “association shall, at least seven days prior to the filing for registry of the privilege, serve upon the delinquent unit owner a sworn detailed statement of its claim for the delinquent or accelerated assessment that includes the date said assessment became delinquent or accelerated.” The Petition additionally alleged that the Association filed an illegal Notice of Lis Pendens. This case was consolidated with the instant case on August 22, 2007.
 

 After an extensive period of discovery, trial in the original case and the two consolidated cases began on May 4, 2007.
 
 [5]
 
 
 *140
 
 Four days of testimony were taken on the original case and one day of testimony was taken on the two consolidated cases. On July 13, 2007, the trial court issued an Interim Judgment and Findings of Fact, wherein the court determined the following: (1) the May 1, 1980 lease between the Association and Guastella was not a nullity, (2) the Association’s alter ego and single business enterprise theories were rejected, (3) by virtue of the language in the lease, the owner of the party room and recreation room was not | sresponsible for condominium fees during the months that those units were leased to the Association, (4) the Association was indebted to PPI in the amount of $16,214.40 as of April 30, 1988, (5) the Association’s action to recover condominium fees was subject to a ten year prescriptive period.
 

 The trial court requested post trial memoranda regarding the applicable prescriptive period of the Guastella defendants’ rental claims against the Association. On July 13, 2007, the trial court issued a Supplemental Interim Judgment and Findings of Fact, which determined that the Guas-tella defendants’ action to recover rent was subject to a three year prescriptive period pursuant to La. C.C. art. 3494(2). The trial court also determined that the Guas-tella defendants’ rent claims could not offset the Association’s claims for condominium fees under La. C.C.P. art. 424.
 

 The trial court issued its judgment on October 25, 2007. This was a final judgment following trial on the merits. With respect to the Association’s principal demand, the court awarded the Association $304,851.97 in condominium fees, special assessments, and late charges.
 
 [6]
 
 The court also awarded the Association judicial interest, and thirty-five percent attorney fees on all sums recovered. The court additionally ordered the Guastella defendants to pay an $11,731.25 fee to a court-appointed accountant in solido. In the consolidated case
 
 I-10, Inc. v. Williams, et al.,
 
 615-106 (La. 24th J.D.C.), the trial court entered judgment against the Association in the amount of $20,000 for refurbishment costs on a Peyton Place unit. The Guas-tella defendants filed this timely appeal. The Association filed a timely cross appeal.
 

 DIRECT APPEAL — ASSIGNMENTS OF ERROR
 

 |10The Guastella defendants assign six assignments of error to the proceedings below. First, the Guastella defendants claim that the Association did not meet its burden of proof. Second, the Guastella defendants contend that the trial court erred in finding that their claims against the Association for unpaid rent were prescribed. Third, the Guastella defendants
 
 *141
 
 allege that the trial court erred in finding that their rent claims could not offset the Association’s claims for condominium fees. Fourth, the Guastella defendants aver that the trial court erred in awarding penalties and costs to the Association. Fifth, the Guastella defendants contend that the trial court erred in awarding attorney’s fees to the Association. Finally, the Guastella defendants allege that the trial court erred in assessing to them the costs of a court-appointed accountant.
 

 DIRECT APPEAL — FIRST ASSIGNMENT OF ERROR
 

 In their first assignment of error, the Guastella defendants contend that the Association did not sustain its burden of proof. More specifically, the Guastella defendants allege that the Association admitted no evidence to establish the precise quantum of condominium fees owed to it.
 

 After filing their Motion for Appeal, the Guastella defendants filed a LSA-C.C.P. Article 2128 Determination of Content for the Record (the “Article 2128 Determination”). In accordance with La. C.C.P. art. 2129, the Guastella defendants filed a “concise statement of the points on which [they intended] to rely” in their appeal. In their first point, the Guastella defendants alleged that the trial court erred by ruling that their claims for condominium fees were prescribed, or in the alternative, that the trial court erred by ruling that the Guastella defendants could not use the claims for rental fees as an offset for the Association’s claim for condominium fees. In the Article 2128 Determination’s second point, the Guastella defendants alleged that the trial court erred in its award Inof attorney’s fees. In the third point, the Guastella defendants alleged that the trial court erred in assessing the costs incurred by of a court-appointed accountant to them.
 

 In response, the Association filed a Motion for Partial Dismissal, alleging that the first assignment of error should be dismissed because the Article 2128 Determination did not allege that the Association failed to sustain its burden of proof. We agree and grant the Motion for Partial Dismissal.
 

 La. C.C.P. art. 2128 permits the appellant to “designate in a writing filed with the trial court such portions of the record which he desires to constitute the record on appeal.” If the appellant fails to do so, “the record shall be a transcript of all the proceedings as well as all documents filed in the trial court.”
 

 La. C.C.P. art. 2129 provides:
 

 An assignment of errors is not necessary in any appeal. Where the appellant designates only portions of the record as the record on appeal, he must serve with his designation a concise statement of the points on which he intends to rely, and the appeal shall be limited to those points,
 

 (emphasis added)
 

 In this case, the Guastella defendants chose to designate a portion of the record in accordance with La. C.C.P. art. 2128. Within their Article 2128 Determination, they listed their assignments of error. They filed a Statement of Points in accordance with La. C.C.P. art. 2129. None of the points alleged that the trial court erred because the Association failed to sustain its burden of proof. This appeal is limited to the points relied upon in the Article 2128 Determination pursuant to La. C.C.P. art. 2129.
 

 The Guastella defendants admit that the Article 2128 Determination did not allege that the Association failed to sustain its burden of proof. However, the Guastella defendants contend that we should not grant the Motion for Partial [^Dismissal
 
 *142
 
 because the Association did not suffer any surprise or prejudice. The Guastella defendants rely on
 
 Weber v. Press of H.N. Cornay, Inc.,
 
 135 So.2d 925 (La.App. 4 Cir.1962). In
 
 Weber,
 
 the Fourth Circuit concluded:
 

 Nothing in the Louisiana Article 2129 dictates the dismissal of an appeal for failure to comply herewith, and since no prejudice or surprise to movants is claimed by them, or shown by the record, the motions to dismiss filed by Harris Intertype Corporation and by Commercial Credit Corporation are each denied.
 

 Weber,
 
 135 So.2d at 927 (emphasis added).
 

 Weber
 
 is distinguishable from the instant appeal. First, the Association
 
 is
 
 claiming that they were prejudiced by the addition of the assignments of error. Second, after reviewing the record, we are convinced that the Association was prejudiced by the addition of two assignments of error. We have reviewed the record diligently. After the Association rested, the Guastella defendants orally moved for a directed verdict. The Guastella defendants limited their motion for directed verdict to whether the Association had sustained its burden of proof of showing that the May 1, 1980 lease was a nullity and whether the Association had sustained its burden of proof of showing that the corporate entities of 1-10 and MEC-II should be disregarded. In this assignment of error on appeal, the Guastella defendants argue that the association failed to meet its burden of proof because the Association admitted no evidence to establish the precise quantum of condominium fees owed to it. This is not what the Guastella defendants argued on their motion for directed verdict to the trial court. At the close of evidence, the Guastella defendants did not reurge the motion for directed verdict. There is no motion for new trial or post-trial memorandum extant in the record wherein the Guastella defendants alleged that the Association failed to sustain its burden of proof. The Article 2128 Determination did not contain a point alleging that the Association failed to sustain its burden of proof. The Association was entitled to | lsrely on the statement of points contained in the Article 2128 Determination. After the Article 2128 Determination was filed, the Association designated the remainder of the record for appeal at its own expense. If the Association had not made such a request, the Guastella defendants would have had an insufficient basis on the record designated from which to argue sufficiency of evidence. The appellants designated only the testimony of some of the witnesses who appeared at trial and some of the many exhibits introduced into the record. The court of appeal cannot review the record for sufficiency of evidence without all of the testimony and all of the exhibits. The Guastella defendants are therefore essentially using the Associations quest for completeness against the Association. The Guastella defendants cannot seriously contend that the Association has not been prejudiced when they could not have successfully raised this assignment of error before the Association paid to designate the entire record.
 

 We also note
 
 Ice v. Dry Klean Carpet Maintenance Co.,
 
 2003-0525 (La.App. 4 Cir. 12/3/03), 863 So.2d 596, a case which was decided by the Louisiana Fourth Circuit more than forty years after
 
 Weber.
 
 In
 
 Ice,
 
 the plaintiff requested that the appeal be limited to certain points and designated a portion of the record. The defendant requested that the entire record be included for appeal.
 
 Ice,
 
 863 So.2d at 598. The
 
 Ice
 
 plaintiff responded by filing a supplemental motion seeking to enlarge the issues on appeal, which was granted by the trial court. The Fourth Circuit held
 
 *143
 
 that granting the supplemental motion was procedurally improper because the trial court did not have jurisdiction to sign a “supplemental” order under La. C.C.P. art. 2088 and because the plaintiff had already designated the issues she wanted to be addressed by the court of appeal.
 
 Id.
 
 at 598-99.
 
 [7]
 
 The only | ^essential difference between the instant case and
 
 Ice
 
 is that in the instant case the Guastella defendants raised their new assignments of error for the first time in their brief, rather than filing a supplemental motion seeking to enlarge the issues on appeal.
 

 Accordingly, we are constrained to grant the Motion for Partial Dismissal. We will not consider the merits of this assignment of error.
 

 DIRECT APPEAL — SECOND ASSIGNMENT OF ERROR
 

 In their second assignment of error, the Guastella defendants contend that the trial court erred in finding that their claims against the Association for unpaid rent were prescribed. The trial court found that prescription for unpaid rents was interrupted every year between 1980 and 1989 because the Association acknowledged its obligation to pay rent in the annual budget approved each year by the Association members. The Guastella defendants argue that a June 15, 1992 Compromise and Settlement Agreement executed between Pan American Life Insurance Company and the Association interrupted prescription because the Association acknowledged its obligation to pay rent in the Agreement. Thus, the Guas-tella defendants’ argument follows, the claims for unpaid rent are not | ^prescribed because Guastella filed his reconventional demand for rent on February 24, 1993. We disagree.
 

 The prescriptive period for “arrear-ages of rent” is three years. La. C.C. art. 3494(2). Prescription runs against all persons unless an exception is established by legislation. La. C.C. art. 3467. Although the party pleading prescription ordinarily has the burden of proof, the burden is shifted to the plaintiff or plaintiff-in-recon-vention when the petition on its face reveals that prescription has run.
 
 See, e.g.,
 
 
 *144
 

 Lima v. Schmidt,
 
 595 So.2d 624, 628 (La.1992);
 
 Riehm v. State Farm Mut. Auto. Ins. Co.,
 
 07-651 (La.App. 5 Cir. 1/22/08), 977 So.2d 1045. Jurisprudence has recognized three theories upon which a plaintiff may rely to establish that prescription has not run: suspension, interruption and renunciation.
 
 Lima,
 
 595 So.2d at 628. “Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe.” La. C.C. art. 3464.
 

 In the instant case, the Guastella defendants’ right to collect rent from the Association ended on April 30, 1989, the date on which the fiscal year of the last annual budget in the record ended. The Association filed its Petition for Damages on December 12, 1992. Thus, the Guas-tella defendants’ reconventional demand is prescribed on its face. The Guastella defendants contend that a June 15, 1992 Compromise and Settlement Agreement executed between Pan Am Life Insurance Company and the Association interrupted prescription. At most, any acknowledgement in the Compromise and Settlement Agreement would only interrupt prescription between Pan Am Life Insurance Company and the Association, not the Guastella defendants and the Association.
 

 The instant case is akin to
 
 Richard Guthrie & Associates v. Stone,
 
 562 So.2d 1071 (La.App. 4 Cir.1990). In
 
 Stone,
 
 the plaintiff filed suit against the defendant on an open account for architectural services. The defendant filed an exception of | ^prescription against the plaintiff, arguing that more than three years had elapsed between the plaintiffs final invoice and the commencement of the lawsuit.
 
 See
 
 La. C.C. art. 3494 (“[t]he following actions are subject to a liberative prescription of three years ... (4) An action on an open account.”). The plaintiff filed an opposition to the exception, to which it attached an affidavit of one of the defendant’s acquaintances. In the affidavit, the defendant’s acquaintance stated that, during a conversation between the defendant and himself, the defendant acknowledged that he owed a debt to the plaintiff before prescription had run.
 
 Stone,
 
 562 So.2d at 1072. Moreover, the defendant allegedly assured the affiant that the plaintiffs debt would be paid.
 
 Id.
 
 at 1072. The trial judge granted the defendant’s exception of prescription and dismissed the plaintiffs suit. The plaintiff appealed, alleging that the trial court erred in granting the defendant’s exception and in finding that there had been no acknowledgment of the debt by the defendant.
 
 Id.
 
 The Fourth Circuit affirmed, reasoning that:
 

 [ E]ven if it had been clearly shown that [the defendant] had acknowledged the debt in a conversation with [his acquaintance], that acknowledgment would have been meaningless because an acknowledgment has no effect beyond the specific right of the person to whom the debt- or makes the acknowledgment.
 
 Flowers v. U.S. Fidelity and Guaranty Co.,
 
 381 So.2d 378 (La.1979);
 
 Autin v. Parish of Lafourche,
 
 423 So.2d 98 (La.App. 1st Cir.1982). Because [the acquaintance] was not a creditor of [the defendant], any statement made by [the defendant] to [the acquaintance] could not serve as an acknowledgment of [the defendant’s] alleged debt to [the plaintiff]. Therefore, we find that ... the testimony of [the acquaintance] regarding a 1985 conversation with [the defendant] ... was [not] sufficient to show an acknowledgment of the debt by [the defendant] so as to interrupt prescription.
 

 Id.
 
 at 1073 (emphasis added).
 

 The same principle applies here. The existence of a Compromise and Settlement Agreement executed between
 
 Pan Am
 
 
 *145
 

 Life Insurance Company
 
 and the Association is immaterial to the issue of interruption between the
 
 Guastella defendants
 
 and the Association.
 
 See also Flowers v. United States Fid. & Guar.
 
 Co., 381 So.2d 378, 382-83 (La.1980) (“[t]he interruption of prescription has no effect beyond the specific right of the person of which the debtor makes acknowledgment.”).
 

 Accordingly, this assignment of error has no merit.
 

 DIRECT APPEAL — THIRD ASSIGNMENT OF ERROR
 

 In their third assignment of error, the Guastella defendants allege that the trial court erred in finding that their rent claims did not offset the Association’s claims for condominium fees. We disagree.
 

 In support of their position, the Guastella defendants rely upon La. C.C.P. art. 424, which provides:
 

 A person who has a right to enforce an obligation also has a right to use his cause of action as a defense.
 

 Except as otherwise provided herein, a prescribed obligation arising under Louisiana law may be used as a defense if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff
 

 (emphasis added)
 

 La. C.C.P. art. 424 permits the use of a prescribed claim as a defense.
 
 See, e.g., Dixie Building Materials Co., Inc. v. Bob L. Whittington & Associates, Inc.,
 
 588 So.2d 78 (La.1991). However, the Guastel-la defendants’ rent claims and the Association’s claims for condominium fees are not “incidental to, or connected with” each other. La. C.C.P. art. 424 is based upon Article 20 of the Louisiana Code of Practice of 1870, which is in turn based on the Roman law maxim
 
 quae temporalia sunt ad agendum perpetua sunt ad excipien-dum
 
 (“things which are temporary for the purposes of attack are permanent for the purposes of defense”). La. C.C.P. art. 424 cmts. (a)-(b). There is a considerable paucity of reported Louisiana cases interpreting this clause of La. C.C.P. art. 424 (or Article 20 of the Louisiana Code of Practice), and many of the reported cases are extremely old. | lsFor example, in
 
 Girod v. His Creditors,
 
 2 La. Ann. 546 (1847), the Louisiana Supreme Court noted:
 

 The claim of the executors of Nicholas Girod is in the nature of a reconventional demand, tending to establish compensation, and affecting in no manner the rights of the insolvent under the judgment of the Supreme Court of the United States. Reconventional demands are not exceptions within the meaning of the rule
 
 Quce, temporalia,
 
 as contended by the appellants. If the laws of prescription could be evaded, by thus disguising principal demands, those laws would become in most cases inoperative. The only exceptions to which the rule
 
 Quce temporalia
 
 applies, are those which are attached to the action and inseparable from the demand. They must, in the language of commentators,
 
 be visceral.
 

 (emphasis added)
 

 Other cases similarly required a “visceral connection” between the obligation sued on by plaintiff and the prescribed obligation interposed as a defense.
 
 See, e.g., Chadwick v. Menard,
 
 104 La. 38, 28 So. 933 (1900);
 
 Roper v. Monroe Grocer Co.,
 
 171 La. 181, 129 So. 811 (1930);
 
 Rapides Grocery Co. v. Clopton,
 
 171 La. 632, 131 So. 734 (1930);
 
 Wolff v. Warden,
 
 141 So. 821 (La.App.1932).
 

 In the instant case, there is no “visceral” connection between the Guastella defendants’ rent claims and the Association’s claims for condominium fees. The Guas-
 
 *146
 
 tella defendants admit that the lease of the party room and the recreation room does not provide for an offset of condominium fees against rental fees. The proposed budgets approved at the annual meetings of the Association each indicated that the Association owed rental fees to the owner of the party room and the recreation room, but made no mention of offsets. Moreover, the condominium fees allegedly owed by the Guastella defendants are due on individual Peyton Place units, not the recreation room and the party room. Simply put, there is no documentary evidence in the record that the Guastella defendants intended to offset condominium fees against rental fees owed to the owner of the recreation room and the party room. The only evidence presented to this Court is the self-serving testimony of Guastella who told the trial court that he
 
 personally
 
 intended to offset condominium fees against rental fees owed to the owner of the recreation room and | n,the party room. This Court of the opinion that such a subjective belief is not enough to constitute a “visceral connection.”
 

 Accordingly, this assignment of error has no merit.
 

 DIRECT APPEAL — FOURTH ASSIGNMENT OF ERROR
 

 In their fourth assignment of error, the Guastella defendants aver that the trial court erred in awarding penalties and interest to the Association. More specifically, the Guastella defendants contend that their failure to pay condominium fees and the Association’s corresponding failure to pay rents constituted “mutual breaches” which should have prevented the trial court from awarding penalties and costs.
 

 The Guastella defendants did not address this assignment of error in their Article 2128 Designation. For the reasons discussed above, we are constrained to grant the Association’s Motion for Partial Dismissal. Accordingly, we will not consider the merits of this assignment of error.
 

 DIRECT APPEAL — FIFTH ASSIGNMENT OF ERROR
 

 In their fifth assignment of error, the Guastella defendants contend that the trial court erred in awarding attorney’s fees to the Association. More specifically, the Guastella defendants allege that the trial court erred in assessing 1-10 with attorney’s fees because I — 10 was the “prevailing party” of the claims between the Association and itself. We disagree.
 

 It is manifest in Louisiana jurisprudence that attorney’s fees are not recoverable unless authorized by contract or statute.
 
 Cajun Concrete Services, Me. v. J. Caldarera & Co., Inc.,
 
 99-1205 (La.App. 5 Cir. 4/12/00), 759 So.2d 237, 240. | gpAttorney’s fees are not awarded to make the injured party whole, but rather to discourage a particular activity or activities on the part of the other party.
 
 Sharbono v. Steve Lang & Son Loggers,
 
 97-0110 (La.7/1/97) 696 So.2d 1382, 1386. The trial court is vested with much discretion in determining the amount of attorney’s fees, and the amount should not be disturbed on appeal absent an abuse of discretion.
 
 Times Picayune Pub. Corp. v. New Orleans Aviation Bd.,
 
 99-237 (La.App. 5 Cir. 8/31/99), 742 So.2d 979, 985, citing
 
 Adams v. Franchise Finance Corp. of America,
 
 96-855 (La.App. 3 Cir. 2/5/97), 689 So.2d 572,
 
 writ denied
 
 97-0604 (La.4/18/97), 692 So.2d 456. Factors which are to be taken into consideration in determining the reasonableness of attorney’s fees include the ultimate result obtained, the extent and character of work performed, the responsibility incurred, the number of court appearances made, intricacies of the facts involved, the importance of the litigation, legal knowledge and skill of the attorneys,
 
 *147
 
 and the diligence and skill of the attorneys.
 
 See, e.g., State, Dept. of Transp. and Development v. Williamson,
 
 597 So.2d 439 (La.1992).
 

 The trial court entered a judgment against 1-10 for $11,725.25 on the Association’s principal demand. However, the trial court entered a judgment against the Association in excess of $46,000 on I-10’s two consolidated principal demands. The Peyton Place condominium declaration provides that “[i]n any proceeding because of an alleged default by a [Peyton Place] unit owner ... the Association shall be entitled to recover the costs of the proceeding and such reasonable attorneys’ fees as may be determined by the Court.” However, the Association is only entitled to fees “if [it] should be the prevailing party.” Who, then, is the “prevailing party” of the claims between the Association and I — 10?
 

 The Louisiana Supreme Court has never addressed which party is the “successful party” or the “prevailing party” for purposes of awarding attorney’s |21fees when both parties prevail on affirmative claims. A review of cases decided in other jurisdictions indicates that some courts have held that when the plaintiff has recovered on his complaint against the defendant and the defendant has recovered on his counterclaim against the plaintiff, the “prevailing party” is the party in whose favor a net judgment was entered.
 
 See, e.g., Szoboszlay v. Glessner,
 
 233 Kan. 475, 664 P.2d 1327 (1983);
 
 Wise v. DeWerd,
 
 373 F.2d 306 (3d Cir.1967) (applying Virgin Islands law).
 

 Other courts have held that a party recovering on its claim may be entitled to costs or attorney’s fees as a “prevailing party” despite the fact that the opposing party received a larger recovery on its affirmative claim.
 
 See, e.g., Ramco v. H-K Contractors,
 
 118 Idaho 108, 794 P.2d 1381 (1990) (plaintiff entitled to costs on claim on which it recovered and defendant entitled to costs on its successful counterclaim).
 

 We are of the opinion that the trial court did not abuse its discretion in assessing I-10 with attorney’s fees on the Association’s principal demand. The trial judge awarded the Association attorney’s fees on its principal demand and 1-10 attorney’s fees on the two consolidated privilege cases. Thus, both parties “prevailed” against the other in the sense that both were successful in their respective demands. This is not a case where the Association filed a principal demand and 1-10 filed a recon-ventional demand. Rather, the Association filed a principal demand, 1-10 filed two principal demands against the Association, and I-10’s principal demands were consolidated with the Association’s principal demand. If the former were true, and I-10’s reconventional demand resulted in a net judgment entered in its favor, I — 10 would arguably have a stronger argument because it would have been the “prevailing party” against the
 
 Association’s
 
 ^demand. Here, the Association arguably has a stronger argument because both it and I-10 “prevailed” against each other.
 

 In addition, we are of thé opinion that the trial court’s ruling is supported by the United States Supreme Court’s endorsement of a “prevailing party” standard in
 
 Hensley v. Eckerhart,
 
 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In
 
 Hensley,
 
 the Supreme Court noted that a “typical formulation [of the prevailing party standard] is that ‘plaintiffs may be considered prevailing parties for attorney’s fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.’ ”
 
 Hensley,
 
 461 U.S at 433, 103 S.Ct. 1933 (citing
 
 Nadeau v. Helgemoe,
 
 581 F.2d 275, 278-279 (1st Cir.1978)). In the instant case, 1-10 succeeded at the
 
 *148
 
 trial level by securing a judgment in its favor against the Association for filing illegal privileges. Similarly, the Association succeeded at the trial level by securing a judgment in its favor for unpaid condominium dues and assessments.
 

 Accordingly, this assignment of error has no merit.
 

 DIRECT APPEAL — SIXTH ASSIGNMENT OF
 
 ERROR
 

 In their sixth assignment of error, the Guastella defendants allege that the trial court erred in assessing them with the costs of a court-appointed accountant. More specifically, the Guastella defendants allege that the trial court erred in assessing I — 10 with the costs of the accountant’s report in solido because 1-10 was the prevailing party of the claims between the Association and itself.
 

 La. C.C.P. art. 1920 provides that the trial court may render judgment for costs against any party. Generally, the prevailing party is not assessed with costs, unless he needlessly incurred additional costs or engaged in some conduct, | ^justifying the imposition of costs against him.
 
 Law Offices of Robert M. Becnel v. Ancale,
 
 02-285 (La.App. 5 Cir. 9/30/02), 829 So.2d 573;
 
 Brown v. General Motors Corp,
 
 95-245 (La.App. 5 Cir. 10/18/95), 662 So.2d 531. That rule denies to a trial judge the power either to refuse to award his or her own costs to a prevailing party or to assess another party’s costs against a prevailing party unless some circumstances present in the case justify doing so.
 
 Muller Elec. Corp. v. E.I. Dupont De Nemours & Co., Inc.,
 
 450 So.2d 746, 749 (La.App. 5 Cir.1984). On review, a trial judge’s assessment of court costs will not be reversed on appeal absent an abuse of discretion.
 
 See, e.g., Penton v. Schuster,
 
 98-1068 (La.App. 5 Cir. 3/30/99), 732 So.2d 597.
 

 Thus, the standard for awarding costs is essentially the same as the standard for awarding attorneys fees. 1-10 was the prevailing party between the Association and itself on the consolidated cases. The trial court accordingly awarded fees and costs to 1-10 in that litigation. The Association was the prevailing party between 1-10 and itself on the principal demand. Based on the discussion above, we do not believe that the trial court abused his discretion in assessing 1-10 with the costs of the accountant’s report.
 

 Accordingly, this assignment of error is without merit.
 

 CROSS APPEAL — ADDITIONAL FACTS AND PROCEDURAL HISTORY
 

 As previously mentioned, Guastella’s role in the management of Peyton Place had ended by 1989, but he and his associated entities remained unit owners and remain unit owners to this day. The Association at various times took steps to secure payment of condominium fees, including filing statutory privileges on the units that Guastella or his associated entities owned. The Association filed three such privileges on Peyton Place unit 108. The first was filed on October 2, 1990, |24the second was filed on August 25, 1994, and the third was filed on December 15, 1998. In addition, the Association filed a Notice of Lis Pendens on unit 108 on January 22, 1999. 1-10 purchased Peyton Place unit 108 at a foreclosure sale in 2003. The previous owner of Peyton Place unit 108 was PPI.
 

 On December 20, 2004,1 — 10 filed a Petition for Damages against the president and secretary of the Association.
 
 I-10, Inc. v. Williams, et al.,
 
 615-106 (La. 24th J.D.C.). I -10 contended that the privileges and Notice of Lis Pendens were illegal because they were recorded before I — 10 became the owner of the units. The trial court agreed, and awarded the 1-10
 
 *149
 
 $20,000 in damages for the expense Guas-tella incurred in preparing unit 108 for sale.
 

 CROSS APPEAL — ASSIGNMENTS OF ERROR
 

 The Association assigns five errors to the proceedings below. First, the Association contends that the trial court erred in denying its alter ego and single business enterprise theories. Second, the Association contends that the trial court erred in quashing a subpoena duces tecum issued to the Guastella defendants during the trial. Third, the Association argues that the trial court erred in failing to hold the owner of the party room and the recreation room liable for condominium fees and assessments. Fourth, the Association avers that the trial court erred in ruling that prescription of its rental obligation to the owner of the party room and the recreation room was interrupted by the approval of Peyton Place annual budgets. Finally, the Association contends that the trial court erred in awarding $20,000 to 1-10 for improperly filing three statutory privileges.
 

 CROSS APPEAL — FIRST ASSIGNMENT OF ERROR
 

 In its first assignment of error, the Association contends that the trial court erred in denying its alter ego and single business enterprise theories. More specifically, the Association contends that the trial court failed “to hold Robert P. | ^Guastella, 1-10, Inc., Management Equities Corp. and Peyton Place, Inc., liable in solido.” We disagree.
 

 Juridical persons, such as corporations, are distinct from their members. La. C.C. art. 24. Stockholders of a corporation are not normally liable for the debts of a corporation. However, under certain circumstances, a court can pierce the veil of a corporation in order to reach the “alter ego” of the corporate defendant and hold the corporate defendant liable for the debts of the corporation. Due to the beneficial role of the corporate concept, the limited liability attendant to corporate ownership should be disregarded only in exceptional circumstances.
 
 See, e.g., F.G. Bruschweiler (Antiques) Ltd. v. GBA Great British Antiques, L.L.C.,
 
 03-792 (La.App. 5 Cir. 11/25/03), 860 So.2d 644. When a party seeks to pierce the corporate veil, the totality of the circumstances is determinative.
 
 Id.
 
 Factors that courts consider when determining whether to apply the alter ego doctrine include but are not limited to the following: (1) commingling of corporate and shareholder funds, (2) failure to follow statutory formalities for incorporating and transacting corporate affairs, (3) undercapitalization, (4) failure to provide separate bank accounts and bookkeeping records, and (5) failure to hold regular shareholder and director meetings.
 
 Id.
 
 In determining whether to pierce the corporate veil to impose contractual or legal obligations on an individual, competing policies supporting the recognition of a separate corporate existence and those justifying piercing the veil must be weighed to determine if there is some misuse of the corporate privilege or other justification for limiting it under the facts of a particular situation.
 
 Regional Urology, L.L.C. v. Price,
 
 42,789, p. 8 (La.App. 2 Cir. 9/26/07), 966 So.2d 1087, 1093. A trial court’s finding that the corporate entity should be disregarded “is a finding of fact [which] we review ... pursuant to the manifest error standard of review.”
 
 Dishon v. Pontie,
 
 2005-659 (La.App. 3 Cir. 12/30/05), 918 So.2d 1132, 1135,
 
 writ denied,
 
 2006-0599 (La.5/5/06), 927 So.2d 317.
 

 Two witnesses during the trial testified extensively as to the Guastella defendants’ business transactions. Jerome Reso was an attorney who assisted Guastella before the creation of Peyton Place. According
 
 *150
 
 to Mr. Reso, 1-10 had incurred significant losses prior to Peyton Place’s creation. Mr. Reso recommended that Guastella merge MEC-I into 1-10. The purpose of this transaction was to utilize the losses of I — 10 against profits that were expected to arise from the development of the condominium. Mr. Reso was also involved in the incorporation of PPI and later recommended to Guastella that MEC-II sell Peyton Place to PPI. The purpose of this transaction was to take advantage of an advantageous capital gains tax rate. According to Mr. Reso, these transactions were legal under federal tax law.
 

 Mr. Gary Radelat was (and remains) the Guastella defendants’ accountant. He has filed tax returns for Guastella and MEC-II/I-10 since 1983
 
 [8]
 
 Mr. Radelat testified that he reviewed the books and records of MEC-II/I-10 each year before filing tax returns and that all of the yearly business transactions MEC-II/I-10 conducted were represented on the respective return. According to Mr. Radelat, MEC-II/I-10 and PPI maintained separate bank accounts, books, records, and balance sheets. Mr. Radelat recalled that MEC-II/I-10 and PPI conducted transactions between themselves, and that the Association took many of his records after Guastella resigned the Peyton Place presidency in 1989.
 

 Based on a through reading of the record and the testimony of Messrs. Radelat and Reso, we are of the opinion that the trial court did not abuse its Indiscretion in dismissing the Association’s alter ego and single business enterprise theories. It is clear from the documents in the record that the Guastella defendants conducted a large amount of business amongst themselves. However, the Guastella defendants established through firsthand testimony that none of Guastella’s associated entities was ever undercapitalized and that each maintained a separate bank account. The Guastella defendants similarly established that each entity’s corporate books and records were separately maintained, that a separate tax return was filed for each entity, and that each entity was properly formed pursuant to Louisiana law. Moreover, Mr. Radelat’s records evidenced a large portion of the business conducted between the Guastella defendants.
 

 Accordingly, this assignment of error has no merit.
 

 CROSS APPEAL — SECOND ASSIGNMENT OF ERROR
 

 In its second assignment of error, the Association avers that the trial court erred in granting a Motion to Quash And For A Protective Order. We disagree.
 

 The Association filed a subpoena duces tecum on May 11, 2007, seven days after the first day of the trial in this matter. The Association subpoena demanded that the Guastella defendants return twenty-eight sets of documents on the second day of trial. The Association requested tax returns, documents evidencing credits between Guastella and his associated entities, documents reflecting the various sales of the party room and recreation room, documents pertaining to a case filed by Guas-tella in federal court, and various other documents. The Guastella defendants filed the Motion to Quash And For A Protective Order in response. The Motion was granted by the trial court on May 25, 2007.
 

 La. C.C.P. art. 1354 requires that a “reasonably accurate description” be given
 
 *151
 
 of the documents to be produced pursuant to a subpoena duces tecum. It further provides that a court may vacate or modify the subpoena duces tecum if it | ¾⅝⅛ unreasonable or oppressive. In addition, Louisiana jurisprudence recognizes the trial judge’s discretion in quashing an unreasonable or oppressive subpoena.
 
 See, e.g., Bank of New Orleans and Trust Company v. Reed Printing & Custom Graphics, Ltd.,
 
 399 So.2d 1260 (La.App. 4 Cir.1981).
 

 When the trial court granted the Motion to Quash, the Association had already propounded discovery requests for the same documents The Guastella defendants had already responded to the discovery requests with all records and documents available; the remaining documents could not be located because they had been seized in an earlier bankruptcy proceeding. The subpoena duces tecum was issued after the first day of the trial in this matter, at which point the case had been pending for fifteen years.
 

 We find that the subpoena was unreasonable and oppressive, especially considering that it was served after the trial had already begun. The Fourth Circuit experienced a somewhat similar situation in
 
 Thomas v. Weatherford International,
 
 463 So.2d 751 (La.App. 4 Cir.1985). In
 
 Thomas,
 
 the plaintiff was using a water blaster to clean out sugar residue in a large tank at a sugar refinery.
 
 Thomas,
 
 463 So.2d at 752. He allegedly suffered injuries to his feet while operating the water blaster.
 
 Id.
 
 Two weeks prior to trial, the
 
 Thomas
 
 plaintiff filed two subpoenas duces tecum asking the defendant for “all documents and manuals concerning the sale, operation, maintenance and design of the water blaster machine [which plaintiff was using at the time of the accident] ...” and “for all documentations concerning complaints, design defects, safety defects, or accidents relating to the water blasting machine in question ...”
 
 Id.
 
 The defendant filed a motion to quash, which was granted by the trial court. The Fourth Circuit affirmed, noting that “[t]he request in the subpoena served for the March trial date is extremely broad and cumbersome, especially when viewed in the light that it was served only 129two weeks before trial.”
 
 Id.
 
 at 753. Similarly, in the instant case, the Association had years to file a subpoena; waiting until trial had already begun was patently unreasonable.
 

 Accordingly, this assignment of error is without merit.
 

 CROSS APPEAL — THIRD ASSIGNMENT OF ERROR
 

 In its third assignment of error, the Association alleges that the trial court erred by failing to hold the Guastella defendants liable for condominium fees and assessments on the party room and the recreation room.
 

 As the Association admits, “[tjhis [assignment of error] is only an issue if this Court reverses the Trial Court’s rulings on prescription and offset.” As we affirm the trial court’s rulings on prescription and the Guastella defendants’ offset claims, thus, this assignment of error becomes moot.
 

 CROSS APPEAL — FOURTH ASSIGNMENT OF ERROR
 

 In its fourth assignment of error, the Association contends that the trial court erred in ruling that prescription of its rental obligation to the owner of the party room and the recreation room was interrupted by the approval of Peyton Place annual budgets. We disagree.
 

 “Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe.” La. C.C. art. 3464. Several of the Association’s annual operating budgets are contained in the record. The earliest budget in the record was for the period beginning on May 1, 1980 and the last
 
 *152
 
 budget in the record was for the period ending on April 30, 1989.
 
 [9]
 
 In each of the extant budgets, “Lease — Club <& Party Room” is listed as an operating expense. The budget for the fiscal year beginning May 1, 1985 reflects the fact that the rent of the party room and the recreation room increased that year per the terms of the |8nMay 1, 1980 lease. It was established through unrefuted testimony that the members of the Association were presented with the operating budget each year at the Association’s annual meeting. It was additionally established through unrefuted testimony that the members of the Association approved each annual budget. Thus, in each annual budget, the Association recognized the right of the owner of the party room and the recreation room to recover rental payments for that particular fiscal year. That is all that is required for an acknowledgment.
 
 See, e.g., Flowers,
 
 381 So.2d at 381-82 (discussing La. C.C. art. 3520, the predecessor Civil Code article to La. C.C. art. 3464).
 

 In addition, we note that even if the Guastella defendants’ rent claims had not been interrupted by the approval of Pey-ton Place annual budgets, the claims would still be prescribed. The fiscal year of the last annual budget in the record ended April 30, 1989. Therefore, assuming that no interruption had occurred, the Guastella defendants’ rent claims would have prescribed on April 30, 1992.
 
 See
 
 La. C.C. art. 3494(2) (“arrearages of rent” are subject to a three year prescriptive period). The instant suit was not filed until December 1992.
 

 Accordingly, this assignment of error is without merit.
 

 CROSS APPEAL — FIFTH ASSIGNMENT OF ERROR
 

 In its fifth assignment of error, the Association contends that the trial court erred in awarding $20,000 to 1-10 for an improperly filed statutory privilege. We agree.
 

 The Louisiana Condominium Act provides that a condominium “association shall have a privilege on a condominium parcel for all unpaid or accelerated sums assessed by the association.” La. R.S. 9:1123.115. Moreover, “if the unit owner fails to timely pay the assessments for common elements for a period of six months or more during any eight-month period ... the association may accelerate the 13t assessment on the common elements for a twelve-month period and file a privilege for the accelerated sums.”
 
 Id.
 
 (emphasis added). An [association of unit owners or association is defined in the Act as a corporation, or unincorporated association, owned by or composed of the unit owners and through which the unit owners manage and regulate the condominium. La. R.S. 9:1121.103(8).
 

 Based on the language of the Act, it is apparent that a privilege for unpaid or accelerated condominium fees may only be recorded against the owner of the condominium unit. The record indicates that privileges for unpaid dues were recorded against 1-10 in 1990, 1994, and 1998 and that a Notice of Lis Pendens was recorded against 1-10 in 1999. All of the privileges and the Notice of Lis Pendens burdened Peyton Place unit 108. However, 1-10 did not become the owner of unit 108 until 2003. Thus, the privileges were wrongly filed.
 

 While we agree that the privileges were wrongly filed, we cannot agree that the trial court properly awarded 1-10 $20,000. There is no statutory basis for an award of damages under the Louisiana
 
 *153
 
 Condominium Act. At the trial level, counsel for the Guastella defendants argued that the Association was liable for damages pursuant to La. R.S. 9:4833. La. R.S. 9:4833 B provides:
 

 One who, without reasonable cause, fails to deliver a written request for cancellation in proper form to cancel the claim or privilege ... shall be liable for damages suffered by the owner or person requesting the authorization as a consequence of the failure and for reasonable attorney fees incurred in causing the statement to be cancelled.
 

 (emphasis added)
 

 Counsel for the Guastella defendants argued that the Association failed to provide I — 10 with a written request for cancellation, thus, the Association was liable to the Guastella defendants for damages. However, La. R.S. 9:4833 is contained in the Louisiana Public Works Act, which “secure[s] ... obligations of the owner [of an immovable] arising out of a work on the immovable.” La. R.S. |S29:4801. There is no corresponding article contained in the Louisiana Condominium Act; nothing in the Act purports to hold a condominium association liable for damages for wrongfully filing a privilege for unpaid condominium fees. Accordingly, we find that the trial court improperly awarded $20,000 to 1-10 for filing an illegal statutory privilege
 

 CONCLUSION AND DECREE
 

 For the foregoing reasons, the Association’s Motion for Partial Dismissal is granted. The portion of the trial court’s judgment awarding $20,000 to 1-10 for an improperly filed privilege is reversed. Judgment is entered in favor of the Association on that claim. In all other respects, the judgment of the trial court is affirmed.
 

 [1]
 

 . The Peylon Place Condominium Association, Inc. is now known as the "1161 Lake Avenue Condominium Association, Inc.”
 

 [2]
 

 . At the time of filing, I — 10, Inc. was known as "Management Equities Corporation"
 

 [3]
 

 . Robert Guastella, Peyton Place, Inc., and I-10, Inc. will hereinafter collectively be referred to as the "Guastella defendants.”
 

 [4]
 

 . I — 10 and PPI were not part of the February 24, 1993 reconventional demand.
 

 [5]
 

 . The parties occasionally refer to the proceedings below as an "evidentiary hearing.” We construe the proceedings below to be a trial on the merits because the trial judge ruled on all of the Association's and the Guas-tella defendants' legal claims. Black's Law Dictionary defines "trial" as "[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding.” Black’s Law Dictionary 1510 (7th ed.1999). A "bench trial” is defined as a "trial before a judge without a jury. The
 
 *140
 
 judge decides questions of fact as well as questions of law.”
 
 Id.
 
 At the trial court level, exhibits were introduced into evidence, witnesses were examined and cross-examined by both parties, and the order of trial was consistent with La. C.C.P. art. 1632.
 

 We additionally note that the trial court's judgment determined the "merits [of the case] in whole” and is therefore a final appealable judgment under La. C.C.P. art. 1841. In the judgment, the trial court opined that the "matter came before the court for trial on the merits.” If the proceedings below had been an evidentiary hearing, the trial court's judgment may well of been interlocutory and the Guastella defendants would have had to file an application for supervisory writs with this Court rather than an appeal.
 
 See
 
 La. C.C.P. art. 2083 (interlocutory judgments are only appealable when expressly provided by law);
 
 Mt. Hawley Ins. Co. v. ADT Sec. Systems, Inc.,
 
 02-298 (La.App. 5 Cir. 10/29/02), 831 So.2d 480, 483
 
 Herlitz Constr. Co. v. Hotel Investors of New Iberia, Inc.,
 
 396 So.2d 878 (La.1981) (interlocutory judgments are only appealable when they may cause irreparable injury).
 

 [6]
 

 . Guastella was ordered to pay the Association $138.319.46. PPI was ordered to pay the Association $154,807.26. I — 10 was ordered to pay the Association $11,725.25.
 

 [7]
 

 . La. C.C.P. art. 2088 provides, in pertinent part:
 

 A. The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to:
 

 (1) Allow the taking of a deposition, as provided in Article 1433;
 

 (2) Extend the return day of the appeal, as provided in Article 2125;
 

 (3) Make, or permit the making of, a written narrative of the facts of the case, as provided in Article 2131;
 

 (4) Correct any misstatement, irregularity, informality, or omission of the trial record, as provided in Article 2132
 

 (5) Test the solvency of the surety on the appeal bond as of the date of its filing or subsequently, consider objections to the form, substance, and sufficiency of the appeal bond, and permit the curing thereof, as provided in Articles 5123, 5124, and 5126;
 

 (6) Grant an appeal to another party;
 

 (7) Execute or give effect to the judgment when its execution or effect is not suspended by the appeal;
 

 (8) Enter orders permitting the deposit of sums of money within the meaning of Article 4658 of this Code;
 

 (9) Impose the penalties provided by Article 2126, or dismiss the appeal, when the appellant fails to timely pay the estimated costs or the difference between the estimated costs and the actual costs of the appeal; or
 

 (10) Set and tax costs and expert witness fees.
 

 [8]
 

 . Mr. Radelat filed tax returns on behalf of MEC-II before the corporate name was changed back to I — 10. At that point, he began to file tax returns for I — 10. For the purposes of this assignment of error only, I — 10 will be referred to as ''MEC-II/I-10” to reflect that MEC-II was renamed I — 10.
 

 [9]
 

 . There are no annual operating budgets in the record for fiscal years after April 30, 1989.